[No. 10,562.—Department One.]

## PEOPLE v. JUAN JAMARILLO.

MANSLAUGHTER — ACCESSORY — CRIMINAL LAW.— Certain evidence stated in the opinion *held* to be sufficient to support a verdict of guilty of manslaughter.

ID.—VERDICT—CRIMINAL LAW.—A verdict which is more favorable to the defendant than is warranted by the evidence and instructions, but which is within the province of the jury to find, is not in any sense contrary to law.

ID.—INTENT.—In manslaughter, there need be no appreciable time between the conceiving of the intention to kill and the actual killing. *Held*, accordingly, in a case where the question of concert entered into the intent, that an instruction that the jury must believe that the concert was in pursuance of an understanding or agreement previously formed, was properly refused.

APPEAL from a judgment of conviction, and an order denying a new trial, in the Superior Court of the County of San Bernardino. ROLFE, J.

*Satterwhite & Curtis*, for Appellant.

*A. L. Hart*, Attorney-General, for Respondent.

McKee, J.:

Defendant was convicted of manslaughter. He moved for a new trial upon the grounds, among others, that the verdict was contrary to law, and that the Court erred in refusing to give to the jury an instruction on a matter of law which arose in the case, and which was necessary to his defense. His motion was denied, and from the order denying a new trial, and the judgment, he appeals.

It is contended that the verdict was contrary to law, because it was shown by the evidence that the shot which killed the deceased was fired by one Ortego, and not by the defendant; that Ortego was, therefore, the principal in the death of the deceased, and the defendant an accessory only; that the principal, according to the verdict in this case, was only guilty of manslaughter; and the defendant, as an accessory, could only be convicted, if at all, of an assault with an intent to kill, or an assault with a deadly weapon; and therefore, it is claimed, the verdict is contrary to law.

But the information ran against the defendant alone, and it alleged that the defendant had committed the crime of murder, by feloniously killing one Edmund Sixby, in the county of San Bernardino. The accusation was, therefore, against the defendant as a principal, not as an accessory; and the evidence before us shows that he participated in the act of killing.

The record does not contain all the evidence given at the trial; but it discloses the facts that one Ortego had quarreled with Sixby about some money, which, we infer from some expressions which were used by the witnesses, the former had staked with the latter on a horse-race. Each of the three men, Sixby, Ortego, and the defendant, was on horseback, in the midst of a crowd of people, some of whom were afoot, and others on horseback. The wordy quarrel between Sixby and Ortego had ceased, and the defendant and Ortego rode off together down the road, in the direction of a saloon about one hundred and fifty yards away, leaving Sixby in the crowd. When they came in front of the saloon, they dismounted and went in. In a

few minutes after they came out, and mounting their horses, rode back to the crowd. Just as they drew near to the crowd, the defendant unwrapped from his right forefinger a rag, and threw it down on the ground, and, as he did so, exclaimed to Ortego, "Yo no dejo los Americanos llevar mi dinero como tu." Both rode their horses abreast, in a walk, through the crowd, until they confronted Sixby, and stopped; the heads of their horses being about twelve or fifteen feet apart from the head of Sixby's horse. In that position, the defendant and Ortego each drew his pistol. Ortego said to Sixby, "You give up the money." It does not appear that the latter made any reply. Whether he did or not, Ortego fired, and the defendant's pistol snapped. Two shots, however, were fired (whether both of them were fired by Ortego is not proved), when Sixby wheeled his horse and rode away at a gallop down the road; and the defendant and Ortego pursued him at a like rate of speed, firing at him as they galloped after him. This race continued for about fifty or sixty yards, when Sixby, mortally wounded, fell from his horse on the road and expired.

Such being the facts of the case as disclosed by the record, it is manifest that the death of the deceased was caused by the joint act of the defendant and Ortego. Assuming it to be true, which is by no means apparent as a fact from the record, that Ortego fired the fatal shot; yet by inciting, aiding, and assisting Ortego to kill deceased, the defendant would be guilty as a principal in his death.

The evidence was sufficient to justify the jury in finding that the defendant himself may have fired the fatal shot; but if it were otherwise, and it showed only that the fatal shot was fired by Ortego, and that the defendant had urged, and encouraged, and aided, and assisted him to kill the deceased, the legal presumption from such conduct and acts on the part of the defendant would be that he himself intended to kill the deceased; and in executing that intention by the guilty means which he followed, he is considered in law as guilty of the crime which may have been committed in the death of the deceased, as though he had actually slain the deceased with his own hand.

Now the crime of murder, for which the defendant was indicted, and for the commission of which he was tried, is dis-

tinguishable by law into degrees—murder of the first and of the second degree; and includes within it the offense of manslaughter—of any one of which the defendant might have been found guilty. The jury found him guilty of manslaughter only, the lowest of the offenses. This verdict may have been more favorable to him than the evidence or the instructions of the Court warranted; but it was one which was within the province of the jury to find; and it is not, in any sense, a verdict contrary to law.

It is next urged that the Court below erred in refusing to give to the jury the following instruction:

"If the evidence should satisfy you that Ortego killed Sixby, and that the defendant was present at the killing, and drew and snapped his pistol at Sixby, you cannot convict him of any of the offenses that may be included in the information, unless the evidence satisfies you beyond a reasonable doubt that the defendant and Ortego were acting in concert, and in pursuance of an understanding or agreement *previously* entered into by them to attack Sixby."

As a legal proposition, the instruction is not maintainable. For, in the trial of a criminal action, a jury is not limited in the investigation of crime to the conduct of parties accused of committing it at or before the making of an attack which may have preceded its commission. The jury have the right, and it is their duty, to take into consideration the conduct of the parties at any time before and after the making of such an attack, including the entire time in which the parties may have been engaged in the consummation of the criminal act, and all the facts and circumstances connected therewith, with a view of determining whether and when the criminal intention was conceived and executed. As has been said, there need be no appreciable space of time between the intention to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind. (*People* v. *Nichols*, 34 Cal. 211; *People* v. *Williams*, 43 id. 344; *People* v. *Long*, 39 id. 1694.) And this intention may be formed at any moment of time before the act of killing, without any concert of action or agreement between parties to attack or to kill.

There is nothing in the point that the act of the Legislature,

approved April 9th, 1880, amending and repealing certain sections of the Penal Code, to provide for prosecutions by information or indictment, is unconstitutional. The title of the act is sufficiently certain, and the sections amended or repealed are specifically enumerated.

Judgment and order denying new trial affirmed.

McKINSTRY, J., and ROSS, J., concurred.