[Crim. No. 2322. In Bank.—December 29, 1920.]

THE PEOPLE, Respondent, v. GEORGE C. WILLIAMS, Appellant.

[1] CRIMINAL LAW—ORDER DENYING MOTION IN ARREST OF JUDGMENT—APPEAL.—An order denying a motion in arrest of judgment is not an appealable order, but any error in denying such a motion is reviewable on appeal from the judgment.

[2] ID.—PRESUMPTION OF SANITY.—A person charged with crime is presumed to be sane until the contrary is established by a preponderance of evidence.

[3] ID.—INSANITY AS A DEFENSE.—Insanity as a defense in a criminal action means such a diseased and deranged condition of the mental faculties as to render the person incapable of knowing the nature and quality of the act he is charged with doing, or if he did know, incapable of distinguishing between right and wrong in relation to such act.

[4] ID.—MURDER—INSANITY—PREPONDERANCE OF EVIDENCE—APPEAL.—On appeal from a judgment of conviction of murder, the defendant cannot claim that the preponderance of the evidence was in favor of his theory of insanity because the prosecution rested on the presumption of sanity and evidence of his acts and conduct and introduced no evidence to contradict that of certain alleged intimate acquaintances who were allowed to give their opinions as to his mental condition based on observations made during a few weeks preceding the homicide.

[5] ID.—PREPONDERANCE OF EVIDENCE—MEANING OF TERM—INSTRUCTION.—In the absence of request for an instruction defining the

term "preponderance of the evidence," or of an intimation that such an instruction was desired, the defendant in a criminal action cannot complain of the failure to give such an instruction.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from orders denying a motion for a new trial and a motion in arrest of judgment. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harold C. Faulkner and Kenneth M. Green for Appellant.

U. S. Webb, Attorney-General, Matthew Brady, District Attorney, and Stanislaus Riley, Assistant District Attorney, for Respondent.

ANGELLOTTI, C. J.—The defendant was convicted of the crime of murder in the first degree for the killing of his wife, Emily Williams, on February 7, 1920. He appeals from the judgment pronounced upon such conviction, and also from an order denying his motion for a new trial, and an order denying his motion in arrest of judgment.

[1] The order denying the motion in arrest of judgment is not an appealable order. Any error of a trial court in denying such a motion is reviewable on the appeal from the judgment. There is no suggestion that the trial court erred in denying the motion in this case. It is clear that the information presented and filed against him in the superior court was without defect of any kind. (Pen. Code, sec. 1185.)

The only defense in the case was that defendant committed the act charged without being conscious thereof, and that he was temporarily insane. The undisputed facts left little room for any other defense than insanity. Mrs. Williams had left the apartment at 275 Turk Street, where she and her husband were living, about two months prior to February 7, 1920, and thenceforth they lived separate and apart, she, with a daughter by a former marriage, at the Bernal Apartments, on Seventeenth Street, near Church Street, and he at the King Edward Apartments, at 275 Turk Street. She had commenced an action for a divorce, and issue had been joined therein and the case set for trial. An order for the payment of temporary alimony had been made, and deceased was en-

deavoring to collect the same, none of which was ever paid. According to defendant's story, he was earnestly seeking her return to him. During the afternoon of February 7, 1920, he got into telephonic communication with her, she then being in the apartment of a friend, a Mrs. Brown, in the King Edward Apartment building, and she definitely informed him that she would not return to him. A little later in the afternoon, when deceased and Mrs. Brown left the building to go to the office of the attorney of the former, they encountered defendant on the street at the entrance to the building, and he made a violent assault upon the deceased and endeavored to drag her back into the building. She managed to escape and, with Mrs. Brown, went to the Hall of Justice and procured a warrant for the arrest of defendant. Later she and Mrs. Brown started for the apartment of deceased, taking a street-car for the corner of Church and Seventeenth Streets. In the meantime defendant purchased a revolver at a pawnbroker's place on Third Street, near Market Street, and, with the same fully loaded in his possession, went first to the apartment occupied by deceased on Seventeenth Street, near Church Street. He gained access to the apartment, but was ordered out by the landlady when complaint of his presence was made by the daughter of deceased. He then left the house and went to the corner of Church and Seventeenth Streets, near which place he was when the street-car on which were deceased and Mrs. Brown arrived. When they saw him after deceased alighted from the car, deceased started to run to her apartment and defendant pursued her. The daughter, who had come out to meet her mother, attempted to stop him, succeeding in taking hold of him, and he shot her, inflicting a mortal wound, and continued his pursuit of deceased. He overtook her and shot her twice, she imploring him not to shoot, and as the result of the wounds inflicted she died almost immediately. The evidence as a whole was such as to show very clearly that he went to the neighborhood of his wife's habitation with the deliberate purpose of putting her to death, unless she would return to him, and that he killed her in pursuance of such deliberate intent. In view of the record, his testimony to the effect that he remembered nothing that occurred between about noon on February 7th and the next morning is so incredible as to be unworthy of consideration, and there is nothing else to suggest that he

was not "conscious" of what he was doing when he sought out and killed his wife.

[2] It is conceded, of course, that in this state it is the well-settled rule that a person charged with crime is presumed to be sane until the contrary is established by a preponderance of evidence, [3] and that insanity interposed as a defense in a criminal action means such a diseased and deranged condition of the mental faculties as to render the person incapable of knowing the nature and quality of the act he is charged with doing, or if he did know this, incapable of distinguishing between right and wrong in relation to such act.

It is claimed here that in view of certain evidence introduced on behalf of defendant in an attempt to show insanity, the "preponderance of the evidence" was in favor of that theory. The prosecution introduced no evidence addressed exclusively to this question, resting on the presumption of sanity and the evidence of the acts and conduct of the defendant, as shown by all the evidence in the case, including various statements made by him to officers of the law, one of which was made during the evening of February 7th. The claim of defendant in this regard appears to be that there was no evidence to contradict that of certain alleged "intimate acquaintances" who were allowed to give their opinions as to his mental sanity (subd. 10, sec. 1870, Code Civ. Proc.) based on their observation of him during the few weeks that elapsed between the commencement of the divorce action and the homicide. To our minds this opinion evidence was, in view of the reasons given for the opinions, of very slight value on the question of the existence of such a condition of mind as would be a defense in this case. [4] In any event the question of the weight and credibility to be given the testimony of these witnesses was solely for the jury, and the testimony was to be considered by the jury in connection with all the other evidence as to the acts and conduct of the defendant, all of which was material on the question of insanity. To our minds there is no warrant whatever, in the light afforded by the record, for a claim that the evidence in favor of the theory of insanity preponderates over that in favor of the theory of sanity, and certainly no warrant for a claim that the jury was not fully justified in concluding from all the evidence that insanity was not shown by a preponderance

CLXXXIV Cal.—38

of the evidence bearing on that question. As we said in *People* v. *Miller,* 171 Cal. 649, 652, [154 Pac. 468, 470], "the term [preponderance of evidence] simply means what it says, viz., that the evidence on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed."

[5] It is urged that the trial court erred to the substantial prejudice of defendant in failing to give an instruction as to what was meant by the term "preponderance of the evidence." No such instruction was requested by defendant, and to our minds no intimation given the trial court that such an instruction was desired. We cannot see that the requested instruction relied on by defendant in this connection was of such a nature as to suggest to the court any such desire. In the absence of such a request or intimation the defendant should not be heard here to complain of the failure of the court to give such an instruction. The term "preponderance of the evidence" so clearly expresses its meaning as to make so plain to the ordinary mind what is intended thereby that further definition is not ordinarily requisite to a proper understanding by a jury. We cannot conceive that the absence of such an instruction here in any degree operated to the prejudice of defendant.

Consideration of the record herein satisfies us that the trial of the defendant was in all respects fair and free from substantial error and that the verdict was fully justified by the evidence.

The appeal from the order denying the motion in arrest of judgment is dismissed. The judgment and order denying a new trial are affirmed.

Shaw, J., Olney, J., Wilbur, J., Lennon, J., Sloane, J., and Lawlor, J., concurred.