[Crim. No. 3143. In Bank.—December 27, 1928.]

THE PEOPLE, Respondent, v. LEONG FOOK, etc., Appellant.

Russell & Heid, Glenn L. Moran and Calvin L. Russell for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Leroy McCormick and Leslie A. Cleary for Respondent.

RICHARDS, J.—This appeal is from a judgment of conviction of the defendant upon a charge of murder and from an order denying his motion for a new trial. Upon the arraignment of the defendant upon such charge, had upon March 28, 1928, he waived time to plead and entered his pleas as follows: "(a) Not guilty as charged in the information; (b) Not guilty as charged in the information by reason of insanity." The cause came on for trial upon

April 17, 1928, whereupon his counsel moved the court to permit the defendant to place the defense of insanity before the jury upon the trial of the defendant upon his plea of "not guilty." This motion the trial court denied. The request of the defendant to have his plea of "not guilty by reason of insanity" presented to the jury at the inception of the trial upon the defendant's plea of "not guilty" was also denied. The trial of the cause upon the defendant's plea of "not guilty" was then proceeded with before the court and jury, during the course of which all of the facts and circumstances surrounding and for a considerable period of time preceding and also succeeding the commission of the homicide were exhaustively, and without any objection from either side, made the subject of inquiry, during the course of which the defendant himself volunteered to take the witness-stand and testify fully as to his relations with the husband, family and friends of the murdered woman, during the giving of which testimony he denied the commission of the crime. At the conclusion of the testimony upon the defendant's plea of "not guilty" his counsel requested permission of the court to argue the question of the defendant's insanity to the jury, which request was refused by the trial court. Thereupon the cause, having been otherwise argued, was submitted to the jury, which, after instructions by the court, retired and presently returned a verdict finding the defendant guilty of murder in the first degree without recommendation. Thereupon the trial court proposed to proceed with the further hearing of the cause upon the defendant's plea of "not guilty by reason of insanity," to which the defendant objected, and in support of such objection offered the plea of "once in jeopardy." The trial court overruled such objection and denied said plea, and in so doing informed counsel for the defendant that the burden of supporting the plea of insanity rested upon the defendant, and inquired whether the defendant desired to offer any such evidence, to which his counsel responded that he did not, declaring it to be the defendant's intent to stand strictly upon his constitutional rights at the time. In this state of the case the prosecution stated that it also had no evidence to offer; and thereupon, and under certain instructions of the trial court touching the plea of insanity, which are not herein assailed,

the cause was resubmitted to the same jury upon the defendant's plea of "not guilty by reason of insanity"; whereupon the jury retired and presently returned a verdict finding that the defendant was sane at the time the offense charged in the information was committed. Upon the defendant's motion for a new trial it was made to affirmatively appear that while the jury at the outset of the trial was sworn to well and truly try the cause in conformity with the provisions of section 1046 of the Penal Code, the jury was not resworn at the time the trial upon the defendant's plea of "not guilty by reason of insanity" was entered upon. The court denied the defendant's motion for a new trial upon this as well as upon the other grounds urged, and the judgment and sentence followed, from which this appeal has been taken.

We are thus brought to a consideration of the nature, interpretation and effect of those amendments to the Penal Code which were enacted by the legislature in 1927 (Stats. 1927, pp. 1148, 1149), and are embraced in sections 1016, 1017, 1020 and 1026 of said code. In order to proceed logically with such consideration it is necessary to refer briefly to the state of the law regulating the procedure of criminal trials prior to the enactment of these amendments to the Penal Code. By the provisions of section 1016 of said code as it read prior to its said amendment, four pleas were permitted to a defendant at the time of his arraignment. These were "guilty," "not guilty," "former conviction or acquittal" and "once in jeopardy." Upon entering a plea of "not guilty" the defendant put in issue every material allegation of the indictment or information. (Pen. Code, sec. 1019.) Upon such plea and during the ensuing trial the defendant, in all crimes to which the existence of a criminal intent was essential, was presumed to be sane until the contrary was established by a preponderance of evidence. (*People* v. *Williams*, 184 Cal. 590, 593 [194 Pac. 1019].) Upon such plea and trial the defendant was presumed to be innocent until the contrary was proved. (Pen. Code, sec. 1096.) While this presumption of innocence prevailed over many of the other disputable presumptions, such as those referred to in *Hunter* v. *Hunter*, 111 Cal. 261 [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756], it did not prevail over such conclusive presumptions

as are referred to in sections 1961 and 1962 of the Code of Civil Procedure; nor did the presumption of innocence prevail over the presumption that every person is sane, since under the provisions of section 1105 of the Penal Code in trials for murder the commission of the homicide by the defendant being proved, the burden of proving insanity as an excuse for the homicide devolved upon the defendant, and such evidence must have been sufficient to overcome this presumption in order to enable the defendant to rely upon the presumption of innocence for an acquittal based thereon. (*People* v. *Harris,* 169 Cal. 53, 69 [145 Pac. 520].) Upon a trial for murder, which consisted in the unlawful killing of a human being with malice aforethought (Pen. Code, sec. 187) and which required proof of a deliberate intention unlawfully to take away the life of a fellow creature (Pen. Code, sec. 188), such intention was to be manifested by the circumstances connected with the offense (Pen. Code, sec. 21) and the prosecution was not only entitled to show all of such circumstances for the purpose of proving such intent, but the defendant was also entitled to have admitted in evidence all of the facts and circumstances attending the commission of the homicide for the purpose not only of disproving intent but also, in all cases wherein murder of the first degree was charged, for the purpose of mitigation. (Pen. Code, sec. 1105.) The term "mitigation" as used in the above section of the Penal Code has a well defined meaning. It means "reduction, diminution, lessening of the amount of a penalty or punishment." (2 Bouvier's Law Dictionary, Rawle's third rev., "Mitigation.") Or, as more fully stated in Black's Law Dictionary, second edition: "Mitigatng circumstances are such as do not constitute a justification or excuse of the offense in question, but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability." (See, also, "Words and Phrases," second series, "Mitigation.") In all cases of first degree murder it was and still is provided by section 190 of the Penal Code, "that every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life at the discretion of the jury trying the same." In commenting upon this provision of the Penal Code in the case of *People* v. *Perry,* 195 Cal. 623, 635 [234 Pac. 890, 897], this court

declared that, ''It is the jury's right and duty to consider and weigh all of the facts and circumstances attending the commission of the offense and from these and such reasons as may appear to it upon a consideration of the whole situation, determine whether or not in the exercise of its discretion life imprisonment should be imposed rather than the infliction of the death penalty.'' The foregoing statement of the law was quoted and expressly approved in *People* v. *Hall,* 199 Cal. 451, 456 [249 Pac. 859], and it amounts to no more than a restatement of the settled law in this state as announced in the early case of *People* v. *Jamarillo,* 57 Cal. 111, 114. In the case of *People* v. *Witt,* 170 Cal. 104, 111 [148 Pac. 928], the following limitation was placed upon the extent of the application of the foregoing rule in a case wherein the defense of insanity was not presented or relied upon by the defendant and wherein the evidence offered and refused admission did not consist of any of the facts and circumstances connected with the commission of the offense charged, but consisted wholly of evidence relating to the character and previous habits of the defendant. This court held that such evidence was not admissible for the sole purpose of enabling the jury to assess the punishment, in the event of conviction, at death or life imprisonment. This conclusion was adopted by the district court of appeal in *People* v. *Golsh,* 63 Cal. App. 612, 613 [219 Pac. 456], wherein the defense of insanity had been expressly disclaimed by the defendant. It will thus be seen that the rule as stated in the two foregoing cases while in no way impinging upon the doctrine laid down in *People* v. *Perry, supra,* may have an important bearing upon cases to which the recent amendments to section 1016 et seq. of the Penal Code may be given application.

The foregoing statement of the law as it previously existed governing the trial of cases wherein the defendant was charged with murder in the first degree has also an important bearing upon the question as to what changes in principle or procedure have been effected by the foregoing recent amendments of the Penal Code. It is to be noted that these amendments and changes in said code do not expressly purport to amend or repeal any other of the provisions of the Penal Code than those thus immediately amended or changed. In view of the well-settled and very

salutary rule that the amendment or repeal of sections of our codes, and especially of our Penal Code, by implication is not to be favored and is only to be tolerated where no reasonable basis for harmonizing the new with the older enactments can be found, it becomes our duty to endeavor so far as is reasonably possible to reconcile these new changes in our Penal Code with those older procedural provisions which are not expressly affected thereby. ██ In such endeavor and in the entire absence of any expressed intent on the part of the legislature in the enactment of these recent changes in the procedure of criminal trials to essay or to accomplish any other, greater or more radical change in our long-established criminal procedure than that to which these amendments expressly relate, we are constrained to hold that the cause at issue between the People of the State and the defendant as presented by the indictment or information and by the defendant's several allowable pleas thereto, in so far as the same is affected by these amendments, remains a single cause and the trial thereof a single trial. We are enforced in this conclusion not only by the aforesaid principle which frowns upon repeals by implication but also by a consideration of the plea of insanity as a defense in criminal causes involving intent and deliberation. It is a canon of the law of crimes existing from antiquity and having its foundation in judicial experience that all persons charged with the commission of offenses against the law are presumed to be sane to the extent of intending the ordinary consequences of their voluntary acts. This presumption, which has been embodied in our law by virtue of the provisions of subdivisions 2 and 3 of section 1963 of the Code of Civil Procedure, is made a form of evidence by the terms of sections 1957, 1959 and 1961 of the same code; and under the latter section this presumption, unless controverted by other evidence, is made conclusive upon the jury trying such a cause. By the terms of section 1105 of the Penal Code it is provided that upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances which excuse it devolves upon the defendant. The defense of insanity existing in the defendant at the time of the commission of the homicide is a defense which does not in most cases have its foundation in the facts and

circumstances attending its commission but depends, as a rule, upon the proof of antecedent facts and conditions which serve to show such a mental state as would make the defendant incapable of exercising that degree of criminal intent which would render his homicidal act a crime. To quote the apt words of Danforth, J., in the leading case of *State* v. *Lawrence,* 57. Me. 574, 583, in dealing with the plea and proof of insanity: "Here as everywhere in the law sanity is assumed and treated as an essential attribute of humanity. The indictment follows the statute, setting out all of the acts deemed essential to the crime, but omitting all reference to the capacity of the accused. Of all that is set out in the indictment he is presumed innocent and that must be proved and nothing else unless he interposes some defense other than a sane denial of the allegations against him. A simple plea of not guilty puts in issue the allegations and only the allegations in the indictment, and as to them the prosecution has the affirmative. But if the accused would put in issue any other allegation, any question of his capacity or responsibility, he must do it by an affirmative statement. If he puts in the plea of insanity he assumes the affirmative, he changes the issue. It is true it may be resorted to in connection with the plea of not guilty, but it is not and cannot be a part of it. The plea of insanity is and of necessity must be a plea of confession and avoidance." The foregoing language of Judge Danforth is quoted with approval in Wigmore on Evidence in dealing with the affirmative nature of the plea of insanity and of the burden of its proof. (5 Wigmore on Evidence, 2d ed., p. 484.) ▮ It is thus made clear that the presentation and proof of insanity in the person committing the homicide do not in any degree diminish the quality of the homicide as an unlawful act. The homicide in question may have every attribute of beastliness. It may have been conceived, attended and executed with the craftiness and cunning of the fox, the bloodthirstiness and lying-in-wait of the tiger, the cruelty and cowardliness of the hyena, the cold ferocity of the most secretive and deadly of serpents; it may exhibit in its attendant facts and circumstances not a single redeeming incident entitling the defendant to offer any plea for mercy, and yet, if he or those who would save him from punishment are able affirma-

tively to prove by preponderating evidence a state of mind in the defendant amounting to a lack of capacity to form a criminal intent at the time of the commission of the homicide, which is the test of sanity, he cannot lawfully be found guilty of murder. The proofs of a state of mind in the defendant at the time of the homicide amounting to legal insanity lie in most instances peculiarly within the knowledge of those who by ties of blood or of past association are most familiar with the defendant's mental qualities and deficiencies, and it is for this reason that by the long-established law the burden of affirmatively establishing the plea of insanity has devolved upon the defendant after a time in the progress of the cause when his plea or pleas have been presented, when the presumption of sanity has attached and when the prosecution has shown the commission of the homicide by the defendant. (Pen. Code, sec. 1105.) ▮ It has thus been established as a result of long judicial experience that the plea and proofs of insanity are not only such as the defendant must affirmatively offer, but that they are also such as, in the nature of things, and as a rule, are separable from the facts and circumstances attending the commission of the homicide. The plea of insanity as well as the proofs which support it more nearly resembles the plea and proofs of ''once in jeopardy,'' or of ''prior conviction or acquittal,'' than they do, for instance, the plea and proofs of self-defense, in the twofold aspect that, first, the former pleas and the proof thereof do not tend in any degree to diminish the unlawfulness of the homicide, nor, second, do they relate to the facts and circumstances of its commission; while the plea and proofs of self-defense are inextricably interwoven with the facts and circumstances of the homicide, and, if sufficiently established, destroy utterly its unlawful attribute. The legislature of this, as of most other states, has for the foregoing reason provided that the pleas of ''once in jeopardy'' and of ''former conviction or acquittal'' must, if relied upon by the defendant, be made separately, and are not provable under the plea of ''not guilty.'' (Pen. Code, secs. 1016, 1017.) In the state of New York, from which these sections of our Penal Code have been bodily taken, and in the case of *People* v. *Connor,* 142 N. Y. 130 [36 N. E. 807], it has been held that when the defendant ten-

dered the plea of "not guilty" and also the separate plea of "former conviction" it was within the discretion of the trial court, even in the absence of an express statute, to order the trial first upon the special plea, and after the hearing and finding of the jury upon that plea, to proceed before the same jury upon the defendant's plea of "not guilty," the court holding that the proceedings upon both issues constituted but one continuous trial; and further holding that the application of the defendant, after the finding and verdict of the jury against him upon his special plea, for permission to re-examine the members of the jury before proceeding upon his plea of "not guilty" as to their qualifications to further act as jurors in view of their determination against him upon his special plea, was properly denied. The court said: "There was but one indictment and one charge, and the defendant's pleas constituted his answer and defense to the accusation. He was entitled to but one trial and could demand but one jury. The order in which the issues should be disposed of was a matter in the discretion of the court, which had power to direct them to be tried separately or together; and whatever course was adopted the trial must be one continuous proceeding, and the rights of the defendant with respect to the examination of the jury were the same as if the plea of 'not guilty' alone appeared upon the record. He had no more right to stop the trial while in progress in order to ascertain the effect which the evidence given had upon the minds of the jury than he would have had if there was only a plea of the general issue." In a recent case decided in the state of Wisconsin, and which involves a direct application of the foregoing principles to the plea of insanity, the supreme court of that state was called upon to interpret and apply an act of its legislature which provided that a defendant in a criminal action who claimed that he was insane at the time of the commission of the alleged crime should be required to plead his insanity separately but with the plea of "not guilty," and which further provided that the issue upon the plea of insanity should be first tried by the jury impaneled to try the cause and that the verdict of the jury upon that plea should be taken before the case was tried upon the plea of not guilty, and that if the verdict of the jury upon such former plea was that the defendant was

not insane at the time of the commission of the defense, the finding of the jury to that effect should be final and conclusive upon the question of the insanity of the defendant upon his trial upon the plea of "not guilty." Upon an appeal by the defendant upon a charge of murder from a judgment of conviction arrived at in pursuance of the procedure provided for in said statute practically every question which is presented in the instant case was considered and decided by said court in its decision of the case of *Bennett* v. *State of Wisconsin*, 57 Wis. 69 [46 Am. Rep. 26, 14 N. W. 912], to which we shall later and more particularly refer.

We have thus far been considering the state of the law as contained in our Penal Code and interpreted by the courts of this and other jurisdictions prior to the recent changes effected by the amendment or enactment of sections 1016, 1017, 1020 and 1026 of the Penal Code. The substance of these amendments and changes is to provide for the addition of a new and special plea to those already enumerated in sections 1016 and 1017 of the Penal Code, viz., the plea of "not guilty by reason of insanity." In so far at least it could hardly be seriously contended, in view of the principles and course of judicial decision above referred to, that in so providing the legislature has to any extent invaded the constitutional rights of any defendant in a cause wherein he may be entitled to avail himself of such special plea. The defendant herein made no such contention when required at his trial to present such special plea and he urges no such contention upon this appeal. It was, however, further provided by the addition of section 1026 to the Penal Code that "When a defendant pleads 'not guilty by reason of insanity' and also joins with it another plea or pleas he shall first be tried as if he had entered such other plea or pleas." ■ Thus far also we are unable to discover any vital or constitutional defect in the changed order of procedure provided for in the portion of the new section 1026 above quoted, since, if our foregoing reasoning in this opinion is correct in the conclusion that but a single cause and but a single trial was before the trial court for its full determination and that the body of our criminal law in this respect has not been changed by these recent enactments, and if our conclusions are also correct to the effect

that the plea of insanity is a separable plea; that the burden of making the proofs in support of such plea is a burden affirmatively cast upon the defendant presenting it, and that in the ordinary and usual course of judicial experience the proofs to be proffered in support of such plea are such as exist antecedently to the commission of the homicide and are thus disconnected with the facts and circumstances which immediately precede, attend and follow its commission; and if we are further correct in our foregoing conclusion that the plea and proof of insanity existing in the state of the defendant at the time of his commission of a homicide, even if fully established, in no degree operates to diminish the unlawful quality of the homicidal act, then it seems to us to logically follow that it would be competent in the legislature to provide for separate hearings in the course of the single trial of a single cause involving such separate pleas, issues and proofs, and that the order of such separated hearings would be a matter lying entirely within the discretion of the legislature, invested as it is with the power to provide by law for the procedural courses of criminal trials within the limits of the constitutional rights of persons accused of crime. We are unable to perceive that the constitutional right of trial by jury has been invaded by the procedural changes in the code thus far considered, our more extended views upon this branch of the question being expressed in the case of *People* v. *Troche, ante,* p. 35 [273 Pac. 767]. We desire, however, at this point to express our full approval of the decision of the supreme court of Wisconsin in the case of *Bennett* v. *State, supra,* as to the singleness of the cause and trial and as to the point that the jury to which has been submitted one of the separable pleas and issues which arise in the course of a criminal trial, and which renders a verdict thereon, is not thereby, under proper instructions as to their legal and limited duty, disqualified to hear and determine successfully the issues presented by the defendant's other and separate pleas. We have already quoted to the same effect the decision of the New York court of appeals in the case of *People* v. *Connor, supra.*

We come now to consider the further provision of the recent amendments to the Penal Code embodied in section 1026 thereof, to the effect that upon the trial of a de-

fendant upon his plea of "not guilty," who has pleaded "not guilty by reason of insanity," he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. As we have already seen, the presumption of sanity is inherent in criminal trials, and while at the outset of such trials under our procedure, in the course thereof, prior to the recent changes therein, it was a disputable presumption, it could only be disputed by the defendant upon his affirmative assumption of the burden of disproving it under his general plea of "not guilty"; and if he either repudiated such plea or refused to assume such burden the presumption of his sanity became conclusive upon the jury trying the cause. (Code Civ. Proc., sec. 1961.) When, therefore, the legislature saw fit to limit the defendant's plea of "not guilty," so that it no longer included the defense of insanity and hence the right of the defendant in the absence of such special plea to offer under the limited plea of "not guilty" his proof of such defense, and when the legislature further provided that the right of the defendant to make such defense should be preserved to him in the form of a special plea and that his proofs in support of such defense should be heard in a separate hearing before a jury, the effect of such changed procedure would logically be to render the presumption of sanity conclusive even in the absence of the provision in the new section 1026 making it so, for the very reason that proof to rebut it was no longer presentable under the recently limited plea of "not guilty," and we are thus brought back to the original question as to the power of the legislature to provide for a separation of the plea of insanity from the plea of not guilty and for a separate trial of such separated issue; and we have already held that the legislature possessed such power. It follows irresistibly that when the defendant in the instant case demanded of the trial court the right to offer evidence upon his plea of insanity during the trial upon his limited plea of "not guilty" he was doing nothing more than demanding the right to present evidence upon an issue which his plea of "not guilty" had not presented and which was not at that stage of the trial before the court or jury; and the same reasoning applies to the demand of the defendant of the right to present argument before the jury upon the issue of insanity during the

hearing upon the issue of "not guilty"; and this is peculiarly true by reason of the fact that no evidence of any kind had up to that time been presented upon which such an argument could have been predicated. The defendant had been permitted, and properly permitted, to offer and have received in evidence all of the facts and circumstances relating to, attending and succeeding the commission of the homicide, and he was entitled to present and was not prevented from presenting to the jury those facts and circumstances with every inference or argument which might be drawn therefrom touching whatever defenses are now available to a defendant upon the plea of not guilty and also as were formerly and are still presentable in mitigation of punishment. The trial court, therefore, assuming our previous conclusions to be sound, committed no error in denying the foregoing two requests on the part of counsel for the defendant.

█ The defendant's next contention was that he had a right to plead "once in jeopardy" at the conclusion of the hearing and return of the verdict upon his plea of not guilty and at the inception of the further hearing upon his plea of insanity. We have recently held that there is no merit in this contention for the reasons stated in *People* v. *Coen,* 205 Cal. 596 [271 Pac. 1074].

█ The defendant's next and final contention is that the jury was not resworn to try the issue of insanity. At the inception of the cause the members of the jury, after having been duly impaneled, were administered the usual oath in the form prescribed by section 604 of the Code of Civil Procedure. This oath expressly covered the cause or matter at issue between the People and the defendant, and hence necessarily covered each and all of the various issues thereof to be successively presented to the consideration of the jury. The cause being single, the administration of no further oath during its progress was required.

We deem it timely to restate in conclusion certain of our foregoing deductions for the purpose of clarifying the procedural courses of jury trials under the changed scope and order of the issues presentable in view of the aforesaid recent amendments to the Penal Code. █ Under the present plea of "not guilty" and upon the hearing thereon the consideration of the jury is expressly limited to the determina-

tion as to whether the defendant committed the homicide in question and as to whether he is to be held responsible therefor if sane at the time of its commission and as to the mitigation, if any, of his punishment in the event of a finding of guilty upon such plea. It would be the duty of the trial court, either at the inception of the hearing upon that issue, or at the conclusion of the evidence and argument thereon, as was done in the instant case, to fully instruct the jury as to their limited functions upon such plea. We must assume that a fair and impartial jury of intelligent men and women would obey such instructions and would therefore hold in reserve their ultimate finding upon the issue of the defendant's sanity until that separate issue and the evidence supporting it had, in the prescribed order of the trial, been committed to it for determination. We are not to assume that such a jury will cease to be fair and impartial as the cause progresses upon its successive issues, but, on the contrary, we must assume, in the absence of any other showing, that the jury has retained its attitude of fairness and impartiality under the changed procedure as before until the whole cause, submitted to it successively for its consideration, has been determined. There is no showing that such was not the precise situation in the instant case, nor was there any evidence presented or, so far as the record before us discloses, presentable, tending in any degree to show that this defendant at the time of his commission of this brutal and atrociously cruel murder was other than entirely sane and responsible.

There may be other problems which are yet to present themselves under this changed procedure, but these are not presentable upon the record in the present case.

The judgment is affirmed.

Waste, C. J., Shenk, J., Langdon, J., Curtis, J., and Seawell, J., concurred.

PRESTON, J., Dissenting.—I dissent. My views are expressed at length in a dissent in the case of *People* v. *Troche, ante,* p. 35 [273 Pac. 767]. Nothing appears in the opinion in this case that alters these views. We do get this fact clearly, however, that the division of opinion between us rests upon the proposition of whether the plea

of insanity is or is not a separate plea in fact. In this case Mr. Justice Richards declares it to be a separable plea akin in independent status to the plea of former acquittal or conviction or once in jeopardy. If I could even for a moment accede to this proposition it would take all the violence out of this dissent. But I cannot come to this view. This statement ignores the basis of all criminal law.

A sound mind is the foundation upon which rests all responsibility to the sovereign for inhibited conduct. Every crime presupposes a sound mind, guiding and directing the criminal agency. If the party charged is insane, the act is not his act and his vindication is as complete and in essence the same as though he had not in fact perpetrated the deed. As said in *State* v. *Strasburg,* 60 Wash. 106, 119 [Ann. Cas. 1912B, 917, 32 L. R. A. (N. S.) 1216, 110 Pac. 1020, 1024]:

"We believe enough has been said to show that the sanity of the accused at the time of committing the act charged against him has always been regarded as much a substantive fact, going to make up his guilt, as the fact of his physical commission of the act. It seems to us the law could as well exclude proof of any other substantive fact going to show his guilt or innocence. If he was insane at the time to the extent that he could not comprehend the nature and quality of the act—in other words, if he had no will to control the physical act of his physical body—how can it in truth be said that the act was his act? To take from the accused the opportunity to offer evidence tending to prove this fact is in our opinion as much a violation of his constitutional right of trial by jury as to take from him the right to offer evidence before the jury tending to show that he did not physically commit the act or physically set in motion a train of events resulting in the act. The maxim, 'An act done by me against my will is not my act,' may, without losing any of its force, be paraphrased to fit our present inquiry as follows: 'An act done by me without my will, or in the absence of my will, is not my act.'"

Take the crime of murder in the first degree—the one before us. Is anyone ready to say that a defendant insane is capable of forming the intent to murder or of possessing the malice or of doing the premeditation and deliberation necessary to make the crime complete? Certainly not. Our

statute specifically provides that criminal intent is the manifestation of a sound mind (sec. 21, Pen. Code). Our statute also says than an insane person is not amenable to punishment (sec. 26, Pen. Code). Then, I repeat that the plea of not guilty contains within it indissolubly the plea of insanity. No legislative declaration can remove it, and it bears no resemblance to the special pleas enumerated above, but does bear a resemblance to the issue of self-defense or not guilty because of noncommission of the interdicted act.

It seems constantly to be overlooked that the verdict required in this bifurcated trial is not merely whether the defendant did or did not do the prohibited act. If this were alone the issue, the main opinion would be sound and the plea would be separable. But this is not the case—the jury are required to convict or acquit—and to convict the sanity of the defendant must first be found to exist; this even though the jury from the circumstances of the crime, the *res gestae,* see that the defendant was and is insane.

I condemn the procedure because it requires a conviction of the crime charged while excluding much of the material testimony upon the issue.

I condemn the procedure because it enables the state to curtail the deliberation of the jury and prevent the free agency of that body in its deliberations. If this is not true, why the inauguration of this cumbersome, useless and time-cheating experiment? The trial judges know the effect of the operation of this statute. The bar can easily discern its baneful effects. The plea of insanity is for practical purposes gone. Its loss will work the conviction of innocent men. It shocks the idealism of the citizen. It imputes vengeance to the sovereign. If the state wants to be fair and just with its citizenry, why arrest the jury in the midst of their deliberations, require a verdict of guilty to be recorded, and then return them to deliberate upon the accuracy of the decision so theretofore rendered? Crime will not be lessened by cruelty. It is certainly to be deplored that such a procedure is to be found among our statutes and it is my hope that the legislature will speedily rectify this injustice.