[Crim. No. 1612. First Appellate District, Division Two.—March 17, 1931.]

THE PEOPLE, Respondent, v. CHARLES L. McENERNEY, Appellant.

Francis T. Cornish for Appellant.

U. S. Webb, Attorney-General, Matthew Brady, District Attorney, August L. Fourtner, Assistant District Attorney, and Robert D. Duke, for Respondent.

STURTEVANT, J.—The defendant was convicted under a charge of grand theft, he made a motion for a new trial, his motion was denied and he has appealed from the judgment and order and has brought up typewritten transcripts.

For several years prior to 1924 the defendant was an attorney at law practicing his profession in San Francisco. On September 25, 1924, he was appointed administrator of the estate of John Quinn, deceased, and thereupon he qualified and continued to act as such administrator until he was removed by an order of court and Eugene Quinn was appointed in his place on August 18, 1926. About one month prior to that date the defendant was adjudged insane and was committed to an asylum where he remained for several months and then he was released and a short time after he was restored to competency August 14, 1930. Other facts will be stated in connection with the point to which those facts are specially pertinent.

The attorney for the defendant has filed a masterly brief in which he has set forth many points, the facts contained in the record which give rise to the point, and his authorities applicable thereto. The prosecution does not dispute the soundness of many points but contends that there is no error in the record and presents its theory of the case tending to support its contention. The case is, in this manner, reduced to a few points which we will take up in the sequence in which they appear in the defendant's brief.

The defendant asserts that the property which he embezzled, if any, was not the property of the estate of John Quinn, but in truth and in fact belonged to certain charities. The deceased had been the owner of certain real property in the state of Arizona. Before his death he conveyed certain interests to the above-mentioned charities, reserving a life estate. The rents collected both before and after the death of the decedent had been commingled in one bank deposit at Needles. The defendant took the entire

deposit into his possession as administrator. It was his duty to do so (Code Civ. Proc., sec. 1581). Thereafter the defendant as administrator had at least a special property in said properties until the rights of the real owners were ascertained and determined. Until he had been so discharged, he will not be heard to say he did not receive such properties in his capacity as administrator. (*People* v. *Royce,* 106 Cal. 173 [37 Pac. 630, 39 Pac. 524]; *People* v. *Robertson,* 6 Cal. App. 514 [92 Pac. 498].)

In his next point the defendant asserts that the offense was more than three years old when he was indicted and that the conversion took place in 1925 or 1926 and that the statute of limitations was not tolled by a belated demand August 14, 1930, that being the date of the conversion as claimed by the prosecution. A search of the record does not disclose facts to sustain any of these contentions. From the beginning and until the end of the trial the learned trial judge received any and all evidence which was offered by either party proving or tending to prove a criminal conversion. At the end of the trial the court gave a set of instructions directly to the point that unless the offense, if any, was committed within three years of the filing of the indictment the defendant should be acquitted. The evidence shows the defendant received the moneys alleged in the indictment September 27, 1924. In a probate account, filed March 23, 1926, he admitted the receipt of the money. Since that date he has not accounted to the estate of John Quinn for a single dollar. During the presentation of his defense he testified that he did not have the money at the time of the trial, but he produced no vouchers or evidence of lost vouchers. From the time the money was received by him, it would be presumed, until the contrary appeared, that the defendant was innocent of crime. Nothing to the contrary is contained in the record until the making of the demand August 14, 1930. The mere failure of the defendant to pay over money, standing alone, did not constitute an offense. (*People* v. *Page,* 116 Cal. 386 [48 Pac. 326]; *Blake* v. *State,* 12 Okl. Cr. 549 [L. R. A. 1917B, 1261, 160 Pac. 30], and extended note.) But when thereafter the prosecution made a legal demand the case stood otherwise. (*People* v. *Hatch,* 163 Cal. 368, 374 [125 Pac. 907].) True it is that Eugene Quinn, after he had qualified as the defend-

ant's successor as administrator of the estate of John Quinn, could have made a demand. But he did not do so till August 14, 1930. If this were a civil case his rights might be affected by his delay. However, in this criminal proceeding the prosecution was entitled to present the facts as it found them. In doing so it based its case on the constructive conversion evidenced by the demand dated August 14, 1930. If, as contended by the defendant, the conversion in fact had taken place long prior to that date he could have shown the fact, but he did not do so.

■ The defendant earnestly asserts that the evidence shows he parted with the money long before the date of the demand which was made August 14, 1930. In this he is clearly overstating the case. He so testified, but he produced no other evidence showing the payment of any of the moneys to anyone at any time. The jury was not bound to accept the defendant's unsupported oath. In this connection it is material to note that the evidence showed that he had previously been convicted of a felony.

■ It is next claimed that if the defendant converted any property it was bonds and not money and that there was a fatal variance between the allegations and the proof. In the account which the defendant filed in the probate court in March, 1926, he stated that he had invested the moneys in U. S. bonds and had the bonds in a safe deposit box. At the trial of the instant case he testified that the foregoing recitals in the probate account were not true. He never attempted to exhibit the bonds at any time. He never at any time exhibited any vouchers showing such an investment. If he did make the investment he had no authority to do so. (*Brenham* v. *Story,* 39 Cal. 179, 188; *Estate of Broome,* 162 Cal. 258, 263 [122 Pac. 470].) As he received moneys he was bound to account for moneys. In *State* v. *Disbrow,* 130 Iowa, 19 [106 N. W. 263, 8 Ann. Cas. 190, at page 192], the Supreme Court of Iowa was considering a similar claim. The court said: ''It is unnecessary for us to go into the question whether in any case an indictment charging an embezzlement of money may be upheld by proof of the conversion of a promissory note. In the case before us the appellant guardian received the money. If he let it out upon interest, the promissory notes thus received represented money. In the due course of his business it was his duty

to collect and safely keep the funds thus invested. When called upon to surrender his trust, it was incumbent upon him to produce the money or its approved representative. If by a fraudulent abuse of his trust the money which he received for his ward is dissipated and lost, it would seem to be immaterial whether it was lost in the very form in which it came into his hands or after he had changed it into the form of moneyed securities. In any event, the loss or embezzlement is to all intents and purposes the loss and embezzlement of the money intrusted to his keeping. Appellant held the notes as the means or evidence by which he could collect or obtain the actual money for his ward, and if he made use of the power or opportunity thus intrusted to him to get the money into his hands and fraudulently applied it to his own use, the proof of that fact sufficiently sustained the charge made in the indictment. It was money which he received and money for which he must account. (*State* v. *Brooks,* 85 Iowa, 366 [52 N. W. 240].)''

It is claimed that the demand was made while the defendant was still incompetent and had not been restored. A petition for restoration was filed May 16, 1930. Later a hearing was had and an order of restoration to capacity was made August 14, 1930. That order spoke as of the sixteenth day of May, 1930, the day the petition was filed. (*Metropolis etc. Sav. Bank* v. *Barnet,* 165 Cal. 449, 452 [132 Pac. 833].) The demand was made August 14, 1930. The making of the demand occurred after the date when the defendant had recovered his health as such date stood determined by the order of restoration.

During the trial the prosecution offered evidence tending to prove other embezzlements by this defendant of other properties which came into his hands as administrator of the estate of John Quinn. The defendant claims such evidence did not prove other embezzlements. Conceding that to be so, we must assume that the jury found accordingly. He also claims that such evidence was not admissible until the *corpus delicti* had been proved. But the trial court had the power to vary the order of proof. From what has been said above we think it is clear that when the case went to the jury the prosecution had introduced sufficient evidence to prove the guilt of the defendant. At that time it could not be said that the *corpus delicti* had not been proved.

The contention that the trial court committed error rests, therefore, on the sole ground that the evidence complained of was admitted out of order. But, as we have stated above, such practice is not error. (Pen. Code, secs. 1093, 1094.)

We find no error in the record. The judgment and order appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 1, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 16, 1931.