[Crim. No. 460. Fourth Appellate District.—January 20, 1941.]

THE PEOPLE, Respondent, v. W. C. WILDE, Appellant.

Thomas Whelan and Vincent Whelan for Appellant.

Earl Warren, Attorney-General, Eugene M. Elson, Deputy Attorney-General, James B. Abbey, District Attorney, and William P. Mahedy, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The defendant was charged with grand theft on the theory that he had embezzled certain sums of money belonging to one Michael J. White.

Prior to 1929, the defendant, who is a lawyer, had acted as attorney for White in the probating of his wife's estate, and had also assisted him in obtaining a pension based upon his services in the Spanish American War. It appears without dispute that over a period of nearly ten years, beginning in 1929, White turned over to the defendant various

sums of money for investment purposes. In May, 1939, White wrote to the defendant saying he was about to retire and asking him where his money was invested. The defendant replied telling him that his money was invested in four certain parcels of real property which stood in White's name, asking him whether he would himself look after these properties or whether he desired defendant to continue doing so, and offering to furnish information about names of tenants, amounts of rentals, taxes, water bills, etc. White replied asking the defendant to continue paying the water bills and collecting rents for the following month. During the next month, at his request, the defendant furnished White with itemized lists of all amounts which he had received from him or for him.

On August 8, 1939, an attorney retained by White called the defendant on the telephone and made a "flat demand" for the return of White's money, which he estimated at $10,-000. The defendant told this attorney that he did not have the money, that White's money was invested in these four parcels of real property, and that these stood in White's name, but offered to sell the properties and obtain the money if given time in which to do it. On August 9, 1939, the defendant delivered to this attorney deeds to the four parcels of real property which then stood in the name of White. At that time the attorney told the defendant that they wanted the cash, that he knew the defendant did not intend to pay, and that if he did not immediately pay over the amount due in cash he was going to have him indicted, prefer charges against him before the Bar Association, and sue him.

On August 12, 1939, this attorney brought an action against the defendant and his wife, attaching all properties standing in their names, including their bank account. On August 26, 1939, this criminal action was brought charging the defendant with six counts of grand theft, each count charging that on August 8, 1939, the defendant unlawfully and fraudulently appropriated for his own use, and not in the due and lawful execution of his trust, a certain sum of money, the property of Michael J. White. Thereafter, some time in October, 1939, the parties entered into a settlement agreement pursuant to which White conveyed the four parcels of real property to the defendant's wife and the defendant paid to White $12,000 which White admitted to be the full amount due him, with interest.

This criminal action was continued, however, an information being filed in the superior court on November 24, 1939. A motion to quash and set aside the information was granted as to the first five counts thereof and the action proceeded to trial before a jury on the sixth count. This count charged the appropriation on August 8, 1939, of $3,216.17 in lawful money belonging to White, that amount being made up of one hundred twelve pension checks, none of which was for over $40, which White had turned over to the defendant over a period beginning in September, 1929, and ending in December, 1937. The jury returned a verdict of guilty on this count and the defendant has appealed from an order denying his motion to quash the information as to the sixth count, from an order denying his motion for a new trial, from an order denying his motion in arrest of judgment, and from the judgment. The record does not show the entry of a judgment, probably because an application for probation was pending at the time this appeal was taken. ▪▪ Since an appeal from the judgment is not properly before us and orders denying a motion to quash and denying a motion in arrest of judgment were not appealable orders (*People* v. *Williams,* 8 Cal. App. 595 [97 Pac. 684] ; *People* v. *Williams,* 184 Cal. 590 [194 Pac. 1019]), the only appeal which may here be considered is the one from the order denying a new trial.

▪ The first and main point presented is whether the evidence is sufficient to sustain the verdict of conviction. It was and is appellant's contention that he was authorized to and did invest White's money in the four parcels of realty for which he obtained deeds in White's name and which White later conveyed to appellant's wife in connection with the settlement agreement. The respondent, however, contends that the appellant was not specifically authorized to invest White's money in real estate, that while the appellant honestly believed that he was entitled to so invest these trust funds that use was in fact unauthorized, and that the appellant's refusal or failure to pay over the amount due in cash after demand made on August 8, 1939, constituted a constructive conversion as of that date which is sufficient to support the verdict.

Of the four deeds which were turned over to White's attorney on August 9, 1939, one conveyed a lot from a man named Perrault to White, being dated February 2, 1931,

and recorded February 28, 1931. Another conveyed two other lots from Perrault to White, being dated November 30, 1931, and recorded July 6, 1937. Another conveyed a lot from one Amo to White, being dated April 1, 1931, and recorded July 6, 1937. The fourth conveyed a lot from Perrault to White, being dated August 29, 1938, and this deed was not recorded. The respondent contends that these grantors, Perrault and Amo, were "dummies" and that these four properties at all times belonged to the appellant's wife. There is evidence that appellant's wife originally had some interest in these properties.

White testified that he turned over these various amounts, including the pension checks, to the appellant for investment, that he thought possibly they were to be invested in first mortgage loans "or something that way", but that absolutely nothing was said by him or the appellant as to how the monies were to be invested. All parties involved lived in San Diego and White testified that he frequently visited the appellant and his wife on Sunday, and that on numerous occasions they took him around to look at these properties and also others owned by the appellant. While he testified that he had not told the appellant to invest his money in real estate, at another time he testified that he had told the appellant to do this. He further testified that he thought the appellant was using this money to build houses and improve houses on his own properties and was satisfied at the time, that from 1930 to 1938 he knew that the appellant had been using his money in this way and was satisfied, and that he knew that the appellant was investing his money in property which stood in the appellant's name and that this was satisfactory to him.

While testifying as to this knowledge and approval White insisted, at the trial, that he had never known that any of the real property in question had been deeded to him. However, it fully appears that each year from 1931 to 1938 White claimed a veteran's exemption in connection with the taxes on one of these properties, stating in the affidavits that he was the owner thereof. He admitted on the stand that the appellant had told him that this property had been conveyed to him, although he claimed he understood that this was only for the purpose of claiming the tax exemption. Moreover, White lived on another of these properties from the time it was deeded to him in 1931, up to the time of the settle-

ment, in October, 1939, without paying any rent. It further appears, without conflict, that in 1934 when the federal government was attempting to reduce or cancel his pension, on the ground that his income had been too great in the year 1933, White signed and submitted to the government a statement claiming that he had lost certain amounts during 1933 on three or four of the parcels of real estate here in question, in order to show that his income for 1933 was not sufficient to prevent a continuance of his pension.

Assuming that the jury believed the statement of the complaining witness that he did not know that any of these properties had been deeded to him, in spite of the strong evidence to the contrary, that fact becomes immaterial since it appears, without dispute, that he had turned the money over to the appellant for investment without providing that it should not be invested in real estate, and since he made no objection over a period of years when he knew the appellant was putting the money into an investment of that kind. He was not only satisfied therewith at the time, but he himself made use of and claimed the benefit of the investment in that form in at least eight or nine instances scattered through the entire period. Under these circumstances there was no fraudulent appropriation of the money up to the time of the demand, the money had then been invested in real property, and whether or not the complaining witness knew the properties had been deeded to him he was not entitled by a demand to set aside the original right he had given to invest the money, and make the amount immediately due in cash.

The respondent admits and insists that it "conclusively" appears from the evidence "that in appropriating White's money to purchase the four pieces of property, title to be vested in White's name, appellant did so honestly believing that the trust so authorized him"; that up to the time of the demand there had not been a fraudulent conversion; that "there was therefore no proof of fraudulent conversion until the demand and refusal of August 8, 1939"; that "the entire theory of the case of the prosecution was constructive conversion, namely, that the appropriation accompanied by fraudulent intent did not take place until the demand and refusal which was well within the three-year period"; and that "we are without then, a fraudulent conversion until the demand was made and appellant refused to comply. When

he refused, he *ipso facto* appropriated to his own use'' the money in question. The respondent particularly relies upon the case of *People* v. *McEnerney,* 112 Cal. App. 609 [297 Pac. 568], in which the defendant received certain funds as the administrator of an estate and failed to show what he had done with the money when a demand was made upon him several years later, and where it was held that there was a constructive conversion at the time of the demand. In that case, the defendant was not authorized to invest the funds and he failed to account for them upon demand. The distinction is obvious between that case and the one now before us where the appellant was authorized to invest the funds and where he accounted for and turned over the proceeds before and at the time the demand was made.

Even under the theory of a constructive conversion there must not only be a demand but a failure to make a proper compliance with that demand. Having invested these funds as he was supposed to do the appellant was not required to immediately turn over a corresponding sum of money but both a proper demand and a sufficient compliance therewith involved his turning over the things in which the money had been invested. He not only did this but offered, if it was desired and reasonable time were given, to convert the investments into cash and return it in that form. The absence of a fraudulent intent up to the time of the demand is conceded and we are unable to find any evidence either showing such an intent at that time or disclosing a failure to comply with a proper demand that he turn over the things in which the money had been invested. In our opinion, the evidence is not sufficient to support the verdict and the motion for a new trial should have been granted.

Because of the views herein expressed it is unnecessary to consider the other points raised by the appellant.

The purported appeal from the judgment, the appeal from the order denying the motion to quash the information, and the appeal from the order denying the motion in arrest of judgment are dismissed. The order denying the motion for a new trial is reversed and the trial court is directed to grant said motion.

Marks, J., and Griffin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 17, 1941.