STATE OF CONNECTICUT *v.* AL J. BITTING

HOUSE, C. J., COTTER, THIM, RYAN and LOISELLE, Js.

1

Argued October 7—decided November 23, 1971

*John R. Williams,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Richard P. Sperandeo,* chief assistant state's attorney, and *David B. Salzman,* assistant state's attorney, for the appellee (state).

Loiselle, J. The defendant, Al Joseph Bitting, was tried before a jury on a substituted information charging him in the first count with assault with intent to kill in violation of General Statutes § 54-117, and in the second count with carrying a

pistol or revolver without a permit in violation of General Statutes § 29-35. After the state rested, the defendant offered evidence to support his claims of alibi and intoxication. He then filed a written motion requesting permission to testify without being subject to impeachment based on his prior felony record. The trial court denied the motion and the defense rested without offering testimony by the defendant. Prior to submitting the case to the jury, the defendant moved for a directed verdict on both counts. The court granted the motion as to the second count but denied it as to the first count. The jury returned a verdict of guilty of aggravated assault on the first count.

The defendant assigns as error the court's refusal to charge that a specific intent is a necessary element of the crime of assault; the admission of evidence concerning possession of a dangerous weapon, one week prior to the date of the aggravated assault for which the jury found him guilty, and the denial of his motion for permission to testify without being subject to impeachment based on his prior felony record. The remaining assignments of error either have been abandoned or are considered as abandoned because they have not been pursued in the brief. *Mendez* v. *Mendez,* 160 Conn. 237, 239, 278 A.2d 795; *Labbadia* v. *Bailey,* 152 Conn. 187, 190, 205 A.2d 377.

The state's claims of proof may be summarized as follows: At the time of the trial the defendant and his wife, Geneva, had been separated for four years. Mrs. Bitting had three children; the oldest was Johnny Pate, age eleven. At about midnight on August 26, 1969, Mrs. Bitting was lying on her bed with Roy Anderson, watching television. She heard two sounds which she believed to be gunshots

and noted "a smell of powder." Anderson pushed her onto the floor and leaped through a closed window. The gunfire awakened Johnny Pate, who saw the defendant outside the broken window and spoke to him. Johnny Pate did not observe the defendant with a gun on him that evening, but he had observed him with a pistol in a holster approximately one week earlier. Officer Jefferson Lee of the New Haven police department was dispatched to Mrs. Bitting's home at approximately 12:30 a.m. on August 27, 1969. On arriving, he observed a man running down the street but was unable to apprehend him. Both he and Mrs. Bitting observed evidence of gunshots.

Among the claims of proof of the defendant are that he was in the presence of Almer Godwin continuously throughout the night of August 26, 1969, at a location removed from the incident; that he was so intoxicated he was unable to walk without assistance; and that "he was passed out" most of the time.

The defendant assigns as error the court's refusal to charge that "to constitute an assault, that attempt or offer must be found beyond a reasonable doubt to have been an intentional act." The defendant requested, further, that the court charge that specific intent is an essential element of the crime and that "if the jury finds that the evidence of intoxication is sufficient to create a reasonable doubt as to whether the defendant was sober enough to form the required intent to commit the crime charged, then you must find the defendant not guilty."

The court charged that "no specific intent is necessary to constitute the crime of simple assault or aggravated assault as is required in the crime of assault with intent to kill, other than such as may be embodied in making an assault or aggravated

assault." Although requested by the defendant to charge the jury on the question of intoxication as a defense to assault and aggravated assault, the court did not mention it in its charge.

To ascertain the proof necessary for conviction of a statutory crime, it must be determined whether culpability under the statute requires merely that one do the proscribed act, that one do the act with general intent, or that one do the act with specific intent. If the statute does not include intent or knowledge as an element of the crime, their proof is not necessary. "It is axiomatic that the legislature may, if it so chooses, ignore the common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions." *State* v. *Husser*, 161 Conn. 513, 515, 290 A.2d 336.

When a mental element is a constitutent of a crime, the character of that element must be identified. In determining which of these crimes require proof of a general intent and which require proof of a specific intent, the language chosen by the legislature in enacting a particular statute is significant. When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general intent for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent.

General Statutes § 53-16 defines aggravated assault as simply "an assault upon another with any

deadly . . . weapon." It contains no language of intent, as do other classifications, such as General Statutes § 53-15, assault with acid on other burning substance; § 53-28, assault with intent to rob; § 53-239, assault with intent to commit rape; § 53-240, assault with intent to carnally know a female child. The repeated references to intent in several sections relating to different crimes, and its omission in § 53-16, does not indicate a legislative intent that aggravated assault be characterized as a specific intent crime. Aggravated assault is simply a common-law assault which is committed with the use of a deadly weapon. Thus, the mental element required for a common-law assault is controlling. At common law, an essential element of assault is an intent either to frighten or harm. Such an intent is general in nature and not specific to achieve any particular kind of result or degree of injury. See *People* v. *Hood,* 1 Cal. 3d 444, 462 P.2d 370; *Parker* v. *United States,* 359 F.2d 1009 (D.C. Cir.); note, 92 A.L.R.2d 635.

The defendant claims that, although courts give lip service to the doctrine that general intent is all that is needed to support a conviction of aggravated assault, this court, in *State* v. *Pallanck,* 146 Conn. 527, 530, 152 A.2d 633, and again, in *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447, recognized that the crime requires a specific criminal intent to do the proscribed act. In the *Pallanck* case, there was evidence of an intent to frighten and, in the *Smith* case, there was evidence of an intent to frighten and injure. In both cases, we held that the evidence of intent present was sufficient to support conviction. There is no basis for inferring that this court referred to such intents as other than proof of general intent, i.e., proof of general intent to do an act is

established if there is proof of an intent to cause fear or harm by means of the act. The appropriateness of such evidence to a determination of guilt rests in the fact that general intent to do the act described in § 53-16 is necessary for conviction. In the *Smith* case, for example, the defendants claimed that their closing a trunk lid on a policeman's head was purely accidental. If that were the case, no general intent would be present. Thus, evidence of intent to cause fear or harm is necessary to show the requisite general intent, thereby negating a defense of accident or negligence.

Considering that only general intent need be proven under General Statutes § 53-16, it would have been error to charge that a showing of specific intent was necessary.

Because voluntary intoxication is relevant only to show an absence of specific intent, it has no relevance to the presence or absence of the general intent required by the statute under discussion. There was, therefore, no error in refusing the defendant's request to charge with respect to his intoxication. *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65; *State* v. *Fiske,* 63 Conn. 388, 392, 28 A. 572; *State* v. *Johnson,* 41 Conn. 584, 586.

The defendant also assigns as error the admission of testimony that he carried a gun about a week before the shooting. The state first sought its admission presumably on the theory that the evidence showed facility to commit the shooting which was charged in the first count as assault with intent to kill. The court sustained the defendant's objection that such evidence was irrelevant. The state then claimed that the evidence was admissible under the second count, which charged the defendant with the crime of carrying a gun without a permit. The

court allowed the state to introduce the evidence, over objection, as relevant to the second count of the information.

The only question, then, is whether testimony that the defendant possessed a gun a week before August 26, 1969, was admissible to prove possession "on or about August 26, 1969."

It has long been established that "it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations." *State* v. *Lorusso,* 151 Conn. 189, 191, 195 A.2d 429; see also *Stenz* v. *Sandstrom,* 143 Conn. 72, 75, 118 A.2d 900; *State* v. *Horton,* 132 Conn. 276, 277, 43 A.2d 744; *State* v. *Ferris,* 81 Conn. 97, 99, 70 A. 587.

The defendant's remedy on the introduction of evidence of a crime on a date different from that charged is to seek a continuance to prepare a defense as to that date. Practice Book §§ 525–527. There is no showing in the record that the defendant sought a continuance or made any claim that the trial court abused its discretion in refusing a continuance. Under such circumstances, we can find no error in the court's admission of the evidence attacked.

The final claim of the defendant is that the trial court erred in denying his motion for permission to testify without being subject to impeachment based on his prior felony record. The defendant's two prior convictions were eight and ten years old and for similar offenses. General Statutes § 52-145 allows evidence of prior convictions for impeachment purposes. *State* v. *Marquez,* 160 Conn. 47, 51,

273 A.2d 689; *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341.

In his brief, the defendant claims that the trial court has statutory discretion to permit the defendant to testify without being subject to impeachment based on his prior felony convictions and that the trial court abused its discretion. General Statutes § 52-145 does not give the court the discretion claimed by the defendant. "The statute and its predecessors were designed and intended to remove the disqualification of a witness which existed at common law because of a conviction of a crime, with the proviso, however, that such conviction might nevertheless be shown to attack his credibility. *State* v. *English,* 132 Conn. 573, 580, 46 A.2d 121." *State* v. *Marquez,* supra, 51. The authority for discretion to exclude prejudicial evidence derives from the common law and not from the impeachment statute. The trial court, traditionally, has had the power to refuse the admission of prejudicial evidence which outweighs its probative value. In considering the admissibility of a "gruesome picture" of a boy just after a bus backed over him, this court said: "When evidence . . . is offered the tendency of which may be to prejudice the jury, its admissibility lies in the sound discretion of the court. It may be admitted if its value as evidence outweighs its possible prejudicial effect." *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 14, 89 A.2d 223. "That evidence is legally admissible does not, in all cases, necessarily require its admission." *Barry* v. *McCollom,* 81 Conn. 293, 299, 70 A. 1035. Even when the relevance of the evidence is clear, "[t]here may remain the question, is its value worth what it costs? There are several counterbalancing factors which may move the court to exclude relevant circumstantial evidence if they

outweigh its probative value. In order of their importance, they are these. First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. . . . This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a lee-way of discretion is generally recognized." McCormick, Evidence, pp. 319–20; see also 6 Wigmore, Evidence (3d Ed.) § 1904.

While it is a fundamental proposition of our jurisprudence that a jury should convict a man for what he has done and not what he is, evidence of prior convictions for impeachment purposes cannot be overlooked. When a defendant testifies, he assumes the posture of a witness, and thus he brings to the stand, by his oath, the presumption of his truthtelling, tempered only by the jury's knowledge of his interest in the outcome of the case and his demeanor. That presumption should not be allowed to prevail in the face of the legislative judgment that records of crimes involving sentences of more than one year affect the credibility of a witness, unless its prejudicial effect far outweighs its probative value. "It is enough to say that the trial judge is the arbiter of the many circumstances which may arise during a trial in which his function is to assure a fair and just outcome. We believe that [when] . . . evidence of a prior conviction is offered under circumstances in which its prejudicial effect far outweighs its materiality and relevancy on the issue of credibility in a criminal trial its admissibility should be determined by the exercise of a sound judicial discretion." *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689. We see no reason why this rule should be modified.

The trial court's decision to deny the motion to

exclude a witness' prior record when offered to attack his credibility will be upset only if the court abused its discretion. In determining whether there has been an abuse, the ultimate issue is whether the court could reasonably conclude as it did. *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463. Every reasonable presumption in favor of the correctness of its action must be made. *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 225, 84 A. 928. After examining the finding, we cannot find that the trial court abused its discretion in denying the defendant's motion.

There is no error.

In this opinion the other judges concurred.