**STATE of Delaware, Plaintiff,**

v.

**Hal SMITH, Jr., et al., Defendants.**

Supreme Court of Delaware.

Aug. 2, 1974.

Richard R. Wier, Jr., State Pros., and Jeffrey M. Weiner, Deputy Atty. Gen., Wilmington, for plaintiff.

Arlen B. Mekler and Richard A. Paul, Asst. Public Defenders; Henry A. Wise, of Wise, Lindh, Mekler & Evans, Wilmington; Anthony G. Amsterdam, Stanford, Cal., and Peggy C. Davis, Jack Greenberg, Jack H. Himmelstein, David Evan Kendall and James M. Nabrit, III, New York City, for defendants.

Before HERRMANN, C. J., DUFFY, J., and BROWN, Vice Chancellor.

DUFFY, Justice:

Five criminal cases, all pending in the Superior Court, were consolidated into a

single appeal in which the following questions were certified and accepted for decision by this Court:

1. In light of the enactment of 11 Del. C. § 4209(2) after the Supreme Court's decision in State v. Dickerson, does the mandatory death penalty nevertheless apply to persons adjudged guilty of committing murder in the first degree between November 1, 1972 and July 1, 1973?

2. Are the provisions governing punishment for first degree murder in 11 Del.C. § 4209(2) constitutional under Furman v. Georgia and State v. Dickerson?

3. If the answer to questions 1 or 2 is no, what sentence may be imposed?

All defendants are charged with murder in the first degree, none has been tried. The pertinent facts as to each are these:

| Defendant | Date of Alleged Offense | Indicted |
|---|---|---|
| Hal Smith, Jr. | March 10, 1973 | June 15, 1973 |
| Michael Cephas | June 3, 1973 | June 18, 1973 |
| Rosemary Lugg | September 4, 1973 | October 10, 1973 |
| Eugene Veglio | October 23, 1973 | November 15, 1973 |
| Charles Edward Kozminski | October 30, 1973 | January 9, 1974 |

I

After the decision by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), this Court ruled that the Recommendation of Mercy Statute, 11 Del.C. § 3901 (which was part of the sentencing procedure for murder in the first degree, 11 Del.C. § 571), was unconstitutional.[1]

State v. Dickerson, Del., 298 A.2d 761 (1972). It was also held that severing the invalid Mercy Statute resulted in a penalty of "mandatory death" for first-degree murder which could be applied prospectively only from November 1, 1972 (the date of the decision in *Dickerson*).

On July 6, 1972 the Governor approved a new Criminal Code, effective July 1, 1973. 11 Del.C. § 101 etc. The Code generally "does not apply to offenses prior to its effective date", but § 102(2) permits application to previous offenses under certain circumstances:

"§ 102. Applicability to offenses committed prior to effective date.

.    .    .    .    .    .

(2) In any case pending on or commenced after the effective date of this Criminal Code, involving an offense committed prior to that date:

(a) Procedural provisions of this Criminal Code shall govern, insofar as they are justly applicable and their applicability does not introduce confusion, delay, or manifest injustice; ·

(b) Provisions of this Criminal Code according a defense or mitigation shall apply, with the consent of the defendant.

.    .    .    .    .    .

We focus here on subparagraph (b).

As to murder in the first degree, the Code provided in pertinent part:

"§ 4209. Conviction and Punishment for First Degree Murder.

(1) In any prosecution for first degree murder the procedure governing the

---

1. 11 Del.C. § 571 provided:
 "§ 571. Murder in the first degree
  Whoever commits the crime of murder with express malice aforethought, or in perpetrating, or attempting to perpetrate the crime of rape, kidnapping or treason, is guilty of murder in the first degree and of a felony, and shall suffer death."
 11 Del.C. § 3901 provided:

§ 3901. Recommendation of mercy
 In all cases where the penalty for crimes prescribed by the laws of this State is death, if the jury, at the time of rendering their verdict, recommends the defendant to the mercy of the Court, the Court may, if it seems proper to do so, impose the sentence of life imprisonment instead of death."

determination of guilt shall be as follows:

.    .    .    .    .    .

(2) In any case in which a finding has been entered by a verdict or a plea of guilty or a plea of nolo contendere that the defendant is guilty of first degree murder, the Court shall impose a sentence of death, or a sentence of life imprisonment without benefit of parole or a sentence of life imprisonment, as determined in accordance with the following procedure:

.    .    .    .    .    .

(b) In the event of a determination of guilt by a jury, the Court shall, .  .  ., as promptly as practicable after the determination of guilt conduct a hearing before the same jury which determined the guilt of the defendant. .  .  . In the hearing evidence may be presented by either party on any matter relevant to sentence including the nature and circumstances of the crime (without undue repetition of evidence adduced at the trial), defendant's background and history, character witnesses, criminal record and any relevant aggravating or mitigating circumstances. Upon the con-

clusion of the hearing the Court shall charge the jury that it may return a verdict of any one of the three available punishments for first degree murder as set forth in this section, and that such verdict is required to be unanimous and is binding on the Court. In the event that the jury shall be unable to reach a unanimous verdict, the jury shall be discharged and the Court shall impose one of the three punishments set forth in this section, as the Court in its discretion shall determine.  .  .  ."

## II

Defendants Lugg, Veglio and Kozminski argue, and the State agrees, that the penalty for any first-degree murder committed between July 1, 1973 (the effective date of the Code) and March 29, 1974 (when a different penalty for first-degree murder became effective) is either life imprisonment without parole or life imprisonment, to be determined in accordance with the provisions of 11 Del.C. § 4209.[2]

■■ Our analysis of the law persuades us that the conclusion of counsel is correct. The mandatory death statute is not retro-

---

2. On March 29, 1974 H.B. 429 became law; it repealed 11 Del.C. §§ 636 and 4209 and provides:

"§ 636. Murder in the First Degree

A person is guilty of murder in the first degree when:

.    .    .    .    .

Murder in the first degree is a Class A felony and shall be punished as provided in § 4209 of this Title.

.    .    .    .    .

§ 4209. Method and punishment for First Degree Murder

(1) In any case in which a person is convicted of first degree murder the Court shall impose a sentence of death. If the penalty of death is determined to be unstitutional the penalty for first degree murder shall be life imprisonment without benefit of parole.

(2) The imposition of a sentence of death shall be upon such terms and conditions as the Court may impose in its sentence, .  .  .

.    .    . All offenses committed and all prosecutions commenced under the provisions of this Act prior to the effective date of this Act shall remain punishable and shall be prosecuted as previously provided and this Act shall not affect any rights or liabilities accrued, penalties incurred, or proceedings begun prior to the effective date of this Act.

.    .    . If any provision of this Act or the application thereof to any person or circumstance, including any one or more of the enumerated instances which constitute first degree murder is held unconstitutional or otherwise invalid, such unconstitutionality or invalidity shall not affect any other provision or application of this Act, and to that end the provisions of this Act are declared to be severable.

.    .    .    .    .

active and the crimes charged allegedly occurred during a period when the punishment provisions of (prior) § 4209 were in effect. That statute, like its predecessor, gave a jury uncontrolled discretionary imposition of the death penalty and the effect of *Furman* is to invalidate it. State v. Dickerson, supra. Under the enactment statute, 58 Del.L., Ch. 497, the death penalty is severable from the remainder of § 4209 which can be given effect without the invalid provisions.

■ It therefore follows that as to defendants Lugg, Veglio and Kozminski the penalty to be imposed upon any of them convicted of first-degree murder shall be either life imprisonment without parole or life imprisonment, to be determined in accordance with the provisions of 11 Del.C. § 4209(2), as stated prior to the March 29, 1974 amendment. As to these defendants, Certified Question Number 2 will be answered in the negative and Certified Question Number 3 will be answered as indicated above.

### III

Turning now to defendants Smith and Cephas, the State argues that mandatory death is the penalty which must be applied under existing law to any persons adjudged guilty of committing murder in the first degree between November 1, 1972 (the effective date of *Dickerson*) and July 1, 1973 (the effective date of the new Criminal Code). Defendants say that the penalty for such a conviction is either life imprisonment without parole or life imprisonment, to be determined in accordance with the provisions of § 4209 (prior to the 1974 amendment).

While the arguments advanced in support of the respective contentions are many, in our view the result turns upon the meaning of the pertinent statutes.

First as to § 102(2)(b), it provides that "defense or mitigation" provisions of the Code apply (with a defendant's consent) to prior offenses. Regrettably, the significant word, "mitigation", is not defined anywhere in the Code and we cannot say that its meaning is clear from or in the text in which it appears. Construction is therefore required. And under § 203 the rule of strict construction is abolished and provisions "must be construed according to the fair import of their terms to promote justice and effect the [stated] purposes of the law".

The State argues that "mitigation" applies to conduct, not to punishment, and it finds support for this in the Commentary on § 102 which provides in part:

"It [subsection (2)] also permits use of defenses and mitigations provided in the Code to offenses committed prior to its effective date, with the consent of the defendant. The policy behind this provision is humanitarian. In enacting a defense, the Legislature has determined that certain conduct is not criminal, or is justifiable or excusable. That conduct should not be penalized after such a decision is made even though technically it occurred before the effective date of the decision. This is, of course, quite a different matter from enacting retroactive offenses, which would be unconstitutional."

As illustrative of its argument, the State says that § 783 makes kidnapping a Class A felony unless the "actor voluntarily releases the victim alive, unharmed, and in a safe place prior to trial, in which case it is a class B felony." Such release, argues the State, is the kind of conduct encouraged by the Code and so accords a defendant an opportunity of "mitigation" which he otherwise would not have.

The logic of that analysis is apparent and mitigation may mean just that when applied to a kidnapping charge. But we are not persuaded that there is a statutory intent to limit mitigation to pre-verdict applications.

■ Generally speaking, the word has a broader meaning in law. It is defined as: "Alleviation; abatement or diminution of a penalty or punishment imposed by law", Black's Law Dictionary (4 ed.), or "Reduction; diminution; lessening of the amount of a penalty or punishment. Circumstances which do not amount to a justification or excuse of the act committed may yet be properly considered in mitigation of the punishment: . . . ." Bouvier's Law Dictionary. And as a verb "mitigate" means "To lessen in severity or burden. To reduce." Ballentine's Law Dictionary. The cases called to our attention apply the term in these same ways. Thus in Smith v. People, 32 Colo. 251, 75 P. 914 (1904), the Court said that "mitigation" is proof of circumstances, including a frame of mind, which does

> "not constitute a justification or excuse of the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability."

And in Connell v. State, 46 Tex.Cr.R. 259, 81 S.W. 746 (1904), the Court said that to "mitigate" an offense is to introduce proof which results in a "reduction of the punishment". According to People v. Leong Fook, 206 Cal. 64, 273 P. 779 (1928), "mitigation" means "reduction, diminution, lessening of the amount of a penalty or punishment".

Consistent with Code § 221(3) (which provides that if a word is not defined it has its commonly applied meaning), we adopt this definition of the term "mitigation" in the context of this case. And the language of § 4209 confirms this view of the intention of the General Assembly; as to the sentencing hearing, it states:

"(2)(b) . . .

In the hearing evidence may be presented by either party on any matter relevant to sentence including the nature and circumstances of the crime (without undue repetition of evidence adduced at the trial), defendant's background and history, character witnesses, criminal record and any relevant aggravating or *mitigating circumstances*." (Emphasis added.)

A similar provision governs the sentencing procedure when it is conducted by a judge without a jury.[3] Thus in two places the Code specifically provided that "mitigating circumstances" could be shown in a post-verdict or after-plea context when the level of culpability was being determined for punishment purposes. We perceive no difference in principle between permissible use of those factors *after* verdict or plea and permissible use *before* verdict in determining whether the conduct charged should be regarded as less culpable as a result of circumstances offered in "mitigation". In both instances they implicitly relate to punishment.

The State argues also that some parts of § 102 of the Code are adopted from the Model Penal Code and the latter has a specific section relating to sentencing for a prior offense which was not included in the Delaware law. Such comparisons are often useful as a construction tool but, in our view, the intention of the General Assembly should be ascertained here on the basis of what it said, not on what it failed to say. As to the State's argument based upon the effect of savings statutes to preserve liability and punishment for offenses under prior law, we do not regard that as persuasive in view of the specific provisions of § 102(2)(b) and § 4209.

■ We are satisfied that our reading of the statutes gives effect to the intention of the General Assembly as expressed therein. But any doubt is resolved by the Commentary to § 102 which states that the

---

3. Code § 4209(2)(a) provided:
   "In the hearing evidence may be presented by either party on any matter relevant to sentence including the nature and circumstances of the crime (without undue repetition of evidence adduced at the trial), defendant's background and history, character witnesses, criminal record and any relevant aggravating or *mitigating circumstances*." (Emphasis added.)

"policy behind this provision is humanitarian." Smith and Cephas, so far as we know, are the only persons in Delaware exposed to the death penalty (under the State's theory) between the date of *Dickerson* and enactment of the 1974 Delaware Capital Punishment Statute. Given that fact and the humanitarian policy behind § 102, certainly any doubt in construction should be resolved on the side of mercy.

We conclude that the mitigation provisions of § 102(2)(b) are available to defendants Smith and Cephas if they are convicted of committing murder in the first degree as charged. Accordingly, the penalty to be imposed upon either of them so convicted shall be either life imprisonment without parole or life imprisonment to be determined in accordance with the provisions of 11 Del.C. § 4209(2) as stated prior to the 1974 amendment. As to these defendants, Certified Question Number 1 will be answered in the negative and Certified Question Number 3 will be answered as indicated above.