### State of Connecticut *v.* Jose M. Binet
### (10630)

Peters, Healey, Parskey, Shea and Grillo, Js.

Argued December 8, 1983—decision released April 10, 1984

Eugene J. Riccio, assistant public defender, for the appellant (defendant).

Richard F. Jacobson, assistant state's attorney, with whom, on the brief, were Donald A. Browne, state's attorney, and Christine O'Sullivan, assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Jose M. Binet, was convicted by a jury of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4),[1] which crime occurred on October 23, 1979, in Bridgeport. On appeal, he claims that the trial court erred: (1) in denying his motion in limine which sought to pre-

---

[1] General Statutes § 53a-134 (a) (4) provides: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged."

The information against the accused charged: "JOSE M. BINET of ROBBERY IN THE FIRST DEGREE and charges that at the City of BRIDGEPORT, Fairfield County, on the 23rd day of OCTOBER 1979 at or about 11:00 p.m. at Knowlton Street and E. Washington Avenue, Bridgeport the said JOSE M. BINET stole certain property from one RICHARD BRACKETT, to wit: current monies of the United States of America, and in the course of the commission of the crime he or another participant displayed what he represented by his words or conduct to be a firearm, to wit: a pistol, in violation of Section 53a-134 (a) (4) of the Connecticut General Statutes."

vent his impeachment by the use of his February 1, 1980, conviction of robbery in the third degree, and (2) in denying his motion for a mistrial.

Certain evidence should be set out to put the issues on appeal in proper focus. On October 23, 1979, at about 11 p.m., Richard Brackett had stopped his car for a traffic signal at an intersection in Bridgeport. While stopped, he was accosted by two young males, one of whom had a handgun. The two males were the defendant and one Frank O'Grine. One pointed the gun to the victim's head and told him to take off his glasses and get out of the car. He was sprayed with something he later found out was some sort of mace and he was ordered to get into the back seat. The two males got into the front seat and asked the victim to give them his money and a short leather jacket he was wearing. After he had done so, he was ordered out of his car. Brackett thereupon went into a nearby bar and telephoned the police. Officer Lawrence Sobkowich, who was in the area, received a radio transmission in his squad car concerning the robbery. That officer spotted Brackett's car, verified its license number with the radio room and radioed for the assistance of another car. Another car in the area manned by Officers Anthony Gomes and Alan J. Stach was dispatched and joined Sobkowich. After some pursuit, two police cars forced the Brackett car to a halt in the area of Father Panik Village, a housing development. The defendant exited the car and started across the street. Sobkowich shouted: "Stop. Police." The defendant turned in Sobkowich's direction. At the trial, Sobkowich testified that "[i]n, I believe, his right hand he had a pistol, a revolver. I fired one shot at him and he fled." When Gomes got out of his car, he heard "a gunshot." Gomes, who had been a special policeman for five years in Father Panik Village before becoming a regular policeman, recognized the defendant as he left the Brackett car.

Although Gomes chased the defendant some distance into Father Panik Village, he lost the defendant behind some buildings. Gomes never saw the defendant "shoot anything" that night. O'Grine was chased and apprehended by Stach. Stach testified that as he was chasing O'Grine, "someone fired a shot behind me."

The defendant was not arrested for the October 23, 1979 robbery until May 19, 1980. When he was arrested, he admitted taking part in that robbery. Officer Robert Mencel, who arrested him at that time, testified that the defendant said that the gun used was a "blank gun."

The defendant's first claim of error is the denial of his motion in limine which sought to preclude the state from impeaching him with his prior conviction of robbery in the third degree dated February 1, 1980.[2] In this motion,[3] the defendant maintained, inter alia, that "the probative value of this evidence on the issue of

---

[2] In the proceedings of that prior offense, the defendant entered an *Alford* plea to the charge of robbery in the third degree. General Statutes § 53a-136 (a). The defendant was sentenced, on February 1, 1980, to one year suspended after 90 days with probation for one year.

[3] The defendant's motion in limine which was filed and heard on October 22, 1980, two days before the trial started, alleged the following: "The Defendant, pursuant to the Fifth, Sixth and Fourteenth Amendments of the Federal Constitution requests an Order from the Court precluding the State from impeaching his credibility by referring to his prior felony conviction. In support thereof the Defendant alleges:

"(A) The Defendant was convicted of robbery in the third degree on February 1, 1980.

"(B) The trial court has the authority to prevent impeachment by the use of prior felony convictions. *State* v. *Bitting,* 162 Conn. 1,.9 [291 A.2d 240] (1971).

"(C) The standard to be applied, is whether the evidence of the prior conviction will cause a prejudicial effect far outweighing its materiality and relevance on the issue of credibility. *State* v. *Marques,* 160 Conn. 47, 52 [273 A.2d 689] (1970).

"(D) The Defendant contends that the probative value of this evidence on the issue of credibility is far outweighed by the risk of unfair prejudice."

credibility is far outweighed by the risk of unfair prejudice." At the hearing on this motion, the defendant stressed the fact that not only did the prior conviction involve a similar crime, but that the prior felony conviction and the instant robbery, both of which occurred in Bridgeport, were quite close in point of time—about nine months before trial. He also pointed out that the instant robbery occurred on October 23, 1979. The state argued that a prior felony conviction could properly be used to attack credibility and that a cautionary instruction by the court to the jury that its use went to credibility could be given.

In denying the defendant's motion, the court said that there had been "at this stage . . . no showing on the defendant's part . . . that the prejudicial effect on him of this type of inquiry by the State would outweigh the probative value on the issue of credibility." The court made the observation that what defense counsel was suggesting was that in each case where a defendant had a prior conviction of the crime with which he was presently charged, "that would automatically constitute prejudicial impressions on the Jury which the Court should protect against." Although it ruled against the defendant, it said that it did not "know how I would think, at the time that that is attempted to be used, how the case would come in up to that point, whether it would be prejudicial at that point in time." The court told defense counsel that his motion could be renewed at trial. We find no error in the court's ruling.

In considering the motion in limine, we look to certain established guidelines to furnish direction for ruling on this claim. There is, of course, no per se rule prohibiting impeachment of a defendant by proof of a prior conviction of a crime similar to that for which he is being tried when that prior conviction is offered to attack his credibility. The fact that such evidence does

not merely show criminal tendencies but may also be significant in proving some of the issues in a case does not alone justify its admission because the court must also weigh its probative value against its prejudicial tendency. *State* v. *Carter,* 189 Conn. 631, 640, 458 A.2d 379 (1983); *State* v. *Nardini,* 187 Conn. 513, 519–20, 447 A.2d 396 (1982); *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982). The weighing or balancing process invokes the exercise of a sound judicial discretion. See *State* v. *Nardini,* supra, 521–22; *State* v. *Bitting,* 162 Conn. 1, 10, 291 A.2d 240 (1971); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970). A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion. See *State* v. *Nardini,* supra, 644; *State* v. *Bitting,* supra, 10–11.

"Evidence has probative value if it tends to prove an issue." *United States* v. *Ball,* 547 F. Sup. 929, 934 (E.D. Tenn. 1981). "The probative value of evidence is merely its tendency to persuade the trier of fact on a given issue." *United States* v. *Martinez,* 555 F.2d 1273, 1276 (5th Cir. 1977). On the other hand, it is important to point out that "[i]mplicit in this balancing approach is recognition of the fact that the danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence." *United States* v. *Martinez,* supra, 1275. We have recognized that "[w]here the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." *State* v. *Carter,* supra, 644, quoting *State* v. *Nardini,* supra, 522. Realistically and fairly, the credibility import of a prior conviction is not to be weighed against the credibility import of some other evidence, but it is to be

weighed against its potential prejudicial effect on the fairness of the defendant's trial. *People* v. *Hughes,* 411 Mich. 517, 520, 309 N.W.2d 525 (1981).

These general guidelines are among those to be considered in passing upon the exercise of discretion in denying the in limine motion. The specific circumstances, however, before the court at that time merit some comment. The motion was heard before jury selection, and the record discloses that counsel, particularly defense counsel, did not provide the court with much information. The trial court did not have any real knowledge of the evidence to be offered in the case and it had only scant knowledge of the claims of the parties.[4] In this case, the record before the court at that time could hardly provide it with a solid basis upon which to grant the defendant's motion. See generally *United States* v. *Oakes,* 565 F.2d 170, 171 (1st Cir. 1977). The defendant had the burden on this motion to demonstrate that character of prejudice that entitled him to a ruling in his favor; see *State* v. *Bennett,* 405 A.2d 1181, 1186 (R.I. 1979); *People* v. *Delgado,* 32 Cal. App. 3d 242, 108 Cal. Rptr. 399 (1973); and he did not sustain that burden. Under the circumstances, we conclude that the trial court's ruling on the motion in limine was not an abuse of discretion.

---

[4] While it is true that the significant factors, such as those set out in *Gordon* v. *United States,* 383 F.2d 936 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968), "would be best appreciated after the defendant had taken the stand and testified on direct . . . [a] judge can prepare himself for an early ruling by inquiring about the nature of the proof the parties intend to present, including what the defendant himself would offer if he took the stand; and an advance ruling may be made contingent on the evidence coming forward as thus indicated." *Commonwealth* v. *Diaz,* 383 Mass. 73, 82, 417 N.E.2d 950 (1981); see *United States* v. *Cook,* 608 F.2d 1175, 1186 (9th Cir. 1979), cert. denied, 444 U.S. 1034, 100 S. Ct. 706, 62 L. Ed. 2d 670 (1980); *United States* v. *Oakes,* 565 F.2d 170, 171–72 (1st Cir. 1977); *State* v. *Martin,* 217 N.W.2d 536, 543–44 (Iowa 1974).

We now turn to the defendant's claim that the trial court erred in denying his motion for a mistrial. We find error. It is necessary that certain circumstances be set out to put the analysis and resolution of this claim in proper focus. After several days of trial, the state had rested its case-in-chief, and the defendant took the witness stand. On direct examination the defendant was not asked if he had any prior felony convictions. Early during his direct examination, however, he admitted, without hesitation, that he and Frank O'Grine were both in Brackett's car,[5] that he (the defendant) pulled out a gun, that they asked Brackett for his money and that they thereafter put Brackett out of the car. At that time, he also said that the gun he showed was a "blank gun" which "[j]ust shot blanks . . ." not "bullets" and "just made a noise." He stated that he had purchased this gun sometime in July, 1979, at a certain pawnshop on Main Street in Bridgeport. This was part of the evidence going to the defendant's claim under General Statutes § 53a-134 (a) (4) making it an affirmative defense to a charge of robbery in the first degree "[t]hat such pistol, revolver . . . or other firearm was not a weapon from which a shot could be discharged." Thereafter, on cross-examination, the defendant admitted that he was with O'Grine, that he pointed a gun at the victim but that this was the blank gun that he had purchased at the pawnshop.[6]

Upon concluding his direct examination, defense counsel, in the absence of the jury, again renewed his motion to exclude the prior robbery conviction asserting essentially the same bases as in his motion in limine. The state, not the defense, then asked permission to

---

[5] The defendant testified that Brackett, the victim, drove up in his car, stopped and asked the defendant and his companion, Frank O'Grine, if they wanted a ride and they accepted.

[6] In answer to a question by the state if anyone else was with him when he purchased the "blank gun" at the pawnshop, he said that Frank O'Grine, Louis Valentin and Jose Valentin were with him.

voir dire the defendant and it was granted without objection. On the voir dire, the defendant admitted the prior robbery conviction. The court again denied the defense motion to bar its use for impeachment purposes, pointing out that it could be used to go to credibility only. The jury returned and, upon inquiry by the state, the defendant admitted that he had been convicted of the felony of robbery in February, 1980.

Immediately after the defendant admitted this prior felony conviction, the prosecutor asked: "Did you have any pistol with you at the time of the offense for which you were convicted?" Defense counsel immediately objected and asked that the jury be excused. After the jury was excused, the prosecutor stated that she would withdraw the question "if there's going to be an objection to it," and she said that the purpose of the question was to ascertain whether the defendant "had the gun with him during the period of time from the time he purchased it to the time of this offense for which he's being tried." The court observed that the question went a "little bit beyond" the credibility purposes for which it had allowed the prior conviction to be used. Maintaining that she did not ask the question "to take anything away from the theory of credibility," she then said: "I merely want to know whether or not he carries this gun with him all the time." The prosecutor then said that she withdrew the question. Defense counsel then moved for a mistrial. In moving for a mistrial, defense counsel argued that the question, even though unanswered, clearly raised an inference in the jury's mind that the gun involved in the case on trial was also used in the earlier robbery;[7] that inquiry into the cir-

---

[7] During his motion for mistrial, defense counsel said, "I know that the gun had nothing to do with that [prior] particular robbery." The record does not indicate whether the public defender at the instant trial also represented the defendant for his February, 1980, conviction, following an *Alford* plea, of robbery in the third degree under General Statutes § 53a-136 (a) which does *not* require the use of a gun.

cumstances of the prior conviction for credibility purposes was improper except for purposes of specifying the prior crime and the date of conviction; and that the inference raised was "totally and absolutely unnecessarily prejudicial" thereby destroying the defendant's opportunity for a fair trial. The court agreed that the question was improper but refused to order a mistrial. Immediately after the jury returned, the court stated that it had sustained the defendant's objection and instructed: "I would ask you to disregard completely the question that was asked. Put it out of your minds and [do] not consider it at all in your deliberations."[8]

The defendant claims that the trial court's refusal to declare a mistrial denied him his right to a fair trial and due process of law under the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[9] In doing so, he argues that, under the circumstances, counsel for the state "deliberately sought to bring before the jury significantly prejudicial evidence which was clearly inadmissible" and that the challenged inquiry was made in bad faith. The state, on the other hand, claims that on the "entire record" the mistrial was properly denied, arguing that there was no bad faith and that the prosecutor gave a reasonable answer for propounding the question. Claiming that the trial court gave curative instructions both at the time the motion for mistrial was denied and in its final instructions to the jury,[10] the state maintains that the defend-

---

[8] The jury was never informed that the prosecutor had in fact withdrawn the question in their absence.

[9] Our holding on this issue today is not only based on our interpretation of the fourteenth amendment to the United States constitution, but also is based on the alternate, independent state ground of the due process clause of the Connecticut constitution. Conn. Const., art. I § 8. See *Michigan* v. *Long,* 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).

[10] In its final instructions the court told the jury that while evidence of prior convictions was admissible, such evidence was limited in its effect

ant's rights were not violated and that the denial of the mistrial motion was proper.

"The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); see Practice Book § 887. When a mistrial is sought on the ground that a prosecutor's improper remarks violated the defendant's constitutional right to due process of law the same standard applies. See *State* v. *Cosgrove,* 186 Conn. 476, 488–89, 442 A.2d 1320 (1982); *State* v. *Hawthorne,* 176 Conn. 367, 372, 407 A.2d 1001 (1978). The burden on the defendant is to show that the prosecutor's remarks were prejudicial in light of the entire proceeding. See *State* v. *Cosgrove,* supra, 488–89; *State* v. *Hawthorne,* supra, 372; *State* v. *Kinsey,* 173 Conn. 344, 348–49, 377 A.2d 1095 (1977). The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Cosgrove,* supra, 488–89, citing *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)." *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 462 U.S. 1001, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983).

and only to be considered as to any weight it might be given on credibility. It also called attention to the improper question pointing out that the question was "disallowed" and it reminded the jury that it had instructed earlier that "you must not consider any evidence which was offered and refused." The trial court also told the jury that "[y]ou must dismiss from your minds the question posed which was disallowed by the Court and stricken from the record" and that it "must not speculate as to what answer may have been given to the disallowed question and no inference adverse to the accused may be drawn from the question which was stricken."

" 'A state's attorney should scrupulously avoid questions of probable impropriety . . . .' " *State* v. *Piskorski,* 177 Conn. 677, 719–20, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). "A demonstrated deliberate effort by a prosecutor to influence the jury against the defendant through the attempted introduction of obviously inadmissible evidence may entitle the defendant to a new trial. *United States* v. *Woods,* 486 F.2d 172 (8th Cir. [1973]); *State* v. *Hafner,* 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 [1975]." *State* v. *Baker,* 182 Conn. 52, 58, 437 A.2d 843 (1980). While the absence of bad faith by a prosecutor is to be accorded considerable weight in a given case, that, however, is not to say that a showing of good faith by the prosecutor is "determinative." *State* v. *Hafner,* 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975). Indeed, it is "well established that serious prosecutorial misconduct, regardless of the prosecutor's intentions, may so pollute a criminal prosecution as to require a new trial, even without regard to the prejudice to the defendant." *State* v. *Hafner,* supra, 251. Crucial considerations in appellate adjudication of such questions are not only the need, where demonstrated, to discipline prosecutors where reprehensible conduct is present but to assure ultimate fairness to the defendant. *State* v. *Hafner,* supra, 252; see *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

There can be no colorable claim by the state that the question, which the trial court itself said was improper, was not deliberately asked. Just prior to jury selection, the same counsel for both the state and the defendant had argued the motion in limine before the same judge and that motion alleged that the prior conviction was robbery in the *third* degree—an offense that does not require a weapon. See General Statutes § 53a-136. In

denying that motion at that time, the court said that it would allow the use of that prior conviction on the issue of credibility. The defendant renewed the motion at trial. After a voir dire sought by the state, and not the defendant, the court again denied the motion but ruled that the prior conviction would be admitted "for [the] purpose of impeachment only" and that the state would be "limited . . . by the rules." After the defendant admitted the prior robbery, the improper question was asked. At this point, we must note two things. First, at the time the improper question was asked, the defendant had already offered evidence going to his affirmative defense, i.e., that the gun he admittedly used in the instant robbery "was not a weapon from which a shot could be discharged." General Statutes § 53a-134 (a) (4). Proof of this, which was the defendant's burden by a fair preponderance of the evidence, would "reduce"[11] or mitigate[12] the offense from first degree robbery as charged to second degree robbery. Second, in oral argument before us, the defendant's counsel argued that the defendant, in his testimony, "tacitly admitted" that he committed second degree robbery; he also maintained that this was "our" position at trial, and, therefore, it was that crime for which the defendant should have been convicted.[13]

---

[11] Public Acts 1975, No. 75-411, § 1, added subsections (3) and (4) to General Statutes § 53a-134. Representative Thomas C. Clark, in reporting the amending legislation, i.e., HB 8328, on the floor of the House said that the "thrust" of it would be to "reduce his [the robber's] charge from first to second degree." 18 H. R. Proc., Pt. 9, 1975 Sess., pp. 4374-76. This legislation passed without specific comment in the Senate. See 18 S. Proc., Pt. 6, 1975 Sess., p. 2805.

[12] Black's Law Dictionary (5th Ed.) defines "mitigation" as "[a]lleviation, reduction, abatement or diminution of a penalty or punishment imposed by law." See also *People* v. *Leong Fook,* 206 Cal. 64, 273 P. 779 (1928).

[13] In oral argument before us, defendant's counsel said: "Mr. Binet admitted he committed robbery in the second degree, tacitly he admitted it, he fudged a little on the facts, but he basically admitted that he committed robbery in the second degree. That was our position at the trial, that's what he should have been convicted of."

It has been pointed out that "[t]o 'mitigate' an offense is to introduce proof which results in a 'reduction of the punishment.' " *State* v. *Smith,* 324 A.2d 203, 207 (Del. 1974), referring to *Connell* v. *State,* 46 Tex. Crim. 259, 81 S.W. 746 (1904). The impermissible inference raised by the improper question under all the circumstances gravely impaired the defendant's right to make his affirmative defense in a fair and proper manner. There is nothing to suggest or explain that any factual predicate existed for the question, particularly with the written in limine motion already indicating a non-weapon robbery. "It is improper conduct for the [prosecution] to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth. ABA Standards Relating to the Administration of Criminal Justice: The Prosecution Function § 5.7 (d); 6 J. Wigmore, Evidence, § 1808 at 276 (3d ed. 1940)." *United States* v. *Harris,* 542 F.2d 1283, 1307 (7th Cir. 1976); see also *United States* v. *O'Connor,* 635 F.2d 814, 819 (10th Cir. 1980). The state does not point to a factual basis to support the clear implication of the question, i.e., that the defendant used a gun in the prior robbery. Moreover, the facts underlying the prior crime could not be elicited under the circumstances as the court had twice already limited the use of the prior felony conviction to impeachment purposes. Therefore, considering the clear absence of any factual basis for the improper question and the specific limitations set by the court on the use of that conviction by the state, "the sequence of questions invited the jury to consider the questions as more than evidence relating to the defendant's credibility."[14]

---

[14] Even if, as the state claims, the question went to credibility, since the crimes are similar, the prosecution should strive to minimize any possible misuse of such evidence and "not impeach the defendant with prior convictions in a manner which suggests to the jury that because of his prior criminal acts, the defendant is guilty of the crimes charged. *United States*

*Fields* v. *United States,* 396 A.2d 522, 527 (D.C. Ct. App. 1978), quoting from *United States* v. *Henry,* 528 F.2d 661, 667 (D.C. Cir. 1976).

We have pointed out that even a showing of good faith by the prosecutor is not determinative of the issue because serious prosecutorial misconduct may so pollute a criminal trial so as to require a new trial even without regard to prejudice to the defendant. *State* v. *Hafner,* supra, 251. There is, however, grave prejudice here. Here there was "arguably"; see *United States* v. *Lossiah,* 537 F.2d 1250, 1252 (4th Cir. 1976); "in the light of the entire proceeding"; *State* v. *Ubaldi,* supra, 562; a case made on the affirmative defense which, if proven by only a fair preponderance of the evidence, would have reduced the crime charged to second degree robbery.[15]

The question remains whether the defendant, despite the efforts of the trial court to eliminate the taint caused by the improper question, was denied a fair trial. The trial court gave instructions to this end, not only at the time the question was placed but also during its final instructions. We have always given great weight to such instructions in assessing claimed errors. See

v. *Henry,* 174 U.S. App. D.C. 88, 528 F.2d 661 (1976); *United States* v. *Carter,* 157 U.S. App. D.C. 149, 482 F.2d 738 (1973)." *Fields* v. *United States,* 396 A.2d 522, 527 (D.C. Ct. App. 1978).

[15] The defendant testified about the "blank gun" and where he bought it. He also offered evidence, through one of the persons with him at the time he purchased it in mid-summer 1979, that on the day he bought it he fired the "blank gun" in the street near the pawnbroker's shop where he purchased it and that a Bridgeport police officer stopped him and the officer only gave the gun back to the defendant when he found out that it was not a "real one" but just a "blank gun." The pawnbroker, who managed but did not own the store where the defendant said he bought the gun in question, said that at the time of the alleged purchase the store did sell these blank guns which were "starter pistols" that shoot blanks, and that a bullet could not be discharged from them because of metal placed in the barrel by the manufacturer. He also said that these guns "[look] like a .22 small revolver" which the victim also stated.

*State* v. *Ubaldi,* supra, 563. On the other hand, in *State* v. *Tinsley,* 180 Conn. 167, 170–71, 429 A.2d 848 (1980), we said that "a curative instruction is not inevitably sufficient to overcome the prejudicial impact" of inadmissible evidence. See also *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1963). One court, observing that a cautionary instruction does not always remove the prejudice involved, has aptly stated: "It must be remembered that after the saber thrust, the withdrawal of the saber still leaves the wound." *United States* v. *Rudolph,* 403 F.2d 805, 807 (6th Cir. 1968).

It has been aptly stated that "[t]he right of an accused in a criminal case to due process is, in essence, the right to a fair opportunity to defend against the state's accusations." *Quigg* v. *Crist,* 466 F. Sup. 544, 550 (D. Mont. 1978), aff'd, 616 F.2d 1107 (9th Cir.), cert. denied, 449 U.S. 922, 101 S. Ct. 323, 66 L. Ed. 2d 150 (1980). We have before us a case which is unique in that the defense has practically conceded guilt of robbery in the second degree, both at trial and before us, and also because the question involved was of such a prejudicial impact on the jury that it effectively destroyed the defendant's credibility and gravely impaired his right to attempt to establish the affirmative defense which would have precluded a conviction of first degree robbery. In this context, we must observe that even the jury had some difficulty understanding what the affirmative defense involved. The only question the jury sent out during their deliberations was "clarify, to us, the difference between first and second degree robbery again, and what preponderance of evidence is, very confusing. This we are in disagreement about. Please explain." The state had a thin case; the evidence for guilt on the crime charged was hardly overwhelming. See *People* v. *Lipman,* 59 App. Div. 2d 748, 398 N.Y.S.2d 555 (1977).

We have only recently discussed at length the appropriate remedy for an unfair trial due to prosecutorial misconduct. See *State* v. *Ubaldi,* supra, 570–73. The " 'denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we . . . must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' *Lisenba* v. *People of State of California,* 314 U.S. 219, 236, 62 S. Ct. 280, 86 L. Ed. 166 [1941], rehearing denied, 315 U.S. 826, 62 S. Ct. 620, 86 L. Ed. 1222 [1942]." *State* v. *Griffin,* 175 Conn. 155, 160, 397 A.2d 89 (1978).

There is error, the judgment is set aside and a new trial is ordered.

In this opinion PETERS and GRILLO, Js., concurred.

PARSKEY, J. (dissenting). The state charged the defendant with robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4) in that "in the course of the commission of the crime he or another participant displayed what he represented by his words or conduct to be a firearm, to wit: a pistol . . . ." It is an affirmative defense under this statute that the weapon used is one from which a shot could not be discharged. The defendant asserted this defense. At the trial he testified that he had used a pistol in the robbery but claimed that it could only fire blanks. On cross-examination, upon inquiry by the state, the defendant admitted that in February, 1980, he had been convicted of robbery. The prosecutor then inquired whether the defendant had a pistol with him at that time. Upon objection by the defendant the question was subsequently withdrawn. After denying the defendant's motion for a mistrial the court immediately gave the

jury a cautionary instruction.[1] Later in its charge to the jury the court again cautioned the jury about the prosecutor's question.[2] The majority concludes that not

[1] "COURT'S PRELIMINARY INSTRUCTIONS TO JURY

"The Court: I will so indicate, that the Court had you retire to the jury room, there was a motion outstanding, and an objection outstanding made by defense counsel. The Court has heard arguments and has sustained the objection of defense counsel. I would ask you to disregard completely the question that was asked. Put it out of your minds and not consider it at all in your deliberations. The Court, upon final instructions to you, will instruct you as to what consideration you can give to the testimony relating to a prior conviction. You will be limited to your considerations of that type of testimony as the Court instructs and I would ask you to keep that in mind at this point in time. You may proceed."

[2] "PARTIAL TRANSCRIPT OF COURT'S INSTRUCTIONS TO JURY

"Now, it is also my recollection, ladies and gentlemen, that the defendant and another witness Mr. Valentin admitted to having been convicted previously of crime. Now, evidence of those convictions may be considered by you only as affected their credibility as witnesses. We have a statute in Connecticut which provides that no person shall be disqualified as a witness because of conviction of crime, but that such conviction may be shown to affect his credibility. The fact that a witness was convicted of a crime, then, does not disqualify him as a witness and it should not be considered by you in that light. Under the old common law of course, persons who had been convicted of infamous crimes were not qualified to be witnesses at all. The statute which I refer to has been construed to have as its purpose to make persons who have been convicted of crime competent witnesses. However, it was not the intention of the legislature to make such a person necessarily entitled to full credit. The fact of the conviction is one of the factors for you to take into consideration, along with any other material facts in determining the credibility which you will accord to the defendant and to Mr. Valentin's testimony. Now, in this regard, I will caution you that evidence of prior conviction of the defendant, of a crime, even if said crime is of a similar nature to the crime of which he is presently charged, cannot be treated by you in any way as proof that the defendant is guilty of the crime of which he presently stands charged. In other words, such evidence is limited in its effect, and you may consider it only as to any weight it might have on the credibility to be afforded the testimony offered by Mr. Binet on direct or cross-examination. The evidence was permitted by the Court for that limited purpose only and should be considered by you only in that light. Now, further, you may recall that a particular question was posed to the defendant or the accused by the State on cross-examination, after his admission of a prior crime. And this was objected to by counsel for the defendant and arguments on that objection were heard by the Court out of the presence of the jury. Now, the Court sustained the

only was the question improper but that the implicit suggestion that on another occasion the defendant had used a pistol in a robbery was so prejudicial that it denied the defendant a fair trial.

"The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial. . . . The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 462 U.S. 1001, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). When measured against this standard, the majority's conclusion that the occurrence denied the defendant a fair trial is incomprehensible.

It is stated that "[t]he impermissible inference raised by the improper question under all the circumstances gravely impaired the defendant's right to make his affirmative defense in a fair and proper manner." This statement does not reveal a self evident truth. The issue before the jury was not whether the defendant used a pistol. That was admitted. Nor was it whether the pistol was fired or even whether it was loaded. The narrow question was whether the pistol was capable of firing a shot and it was the defendant's burden to establish by a fair preponderance of the evidence that a shot could not be fired from the pistol. The mere fact that a pistol is possessed or displayed on more than one occa-

---

objection raised by the defense and the question was disallowed and no answer from the defendant was forthcoming. I would remind you, as I instructed you earlier in this charge, that you must not consider any evidence which was offered and refused. You must dismiss from your minds the question posed which was disallowed by the Court and stricken from the record. You must not speculate as to what answer may have been given to the disallowed question and no inference adverse to the accused may be drawn from the question which was stricken."

sion says absolutely nothing about its capacity to fire bullets. To hold otherwise is not only to indulge in convoluted logic but also to enshrine speculation in the pantheon of rational thought.

The jury were aware that the defendant had been convicted of another robbery. They were instructed that they could consider this previous conviction but only on the question of the defendant's credibility. They were specifically instructed that they were not to speculate about the answer to the prosecutor's question and were to draw no adverse inferences against the defendant from the stricken question. While it is obvious that the jury rejected the defendant's affirmative defense I fail to see how they could have been influenced by the knowledge that the defendant purportedly had used a pistol in another robbery. The defendant testified that the pistol he used in the crime charged was a "starter pistol" he had purchased at a pawnbroker's in July, 1979. The pawnbroker testified that at the time of the alleged purchase he did sell "starter pistols." The defendant admitted that he had committed two robberies. He further admitted that he displayed a pistol in one of them, namely, the offense charged. If the jury were inclined to accept the defendant's explanation that the pistol was a "blank gun" and if they were inclined to believe that a gun was used in the other robbery, then they could have inferred that it too was a "blank gun." I would find no error.

In this opinion SHEA, J., concurred.